EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GEORGE E. PENCE (Cal. Bar No. 257595)
A. CARLEY PALMER (Cal Bar. No. 307303)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2253/0282
    Facsimile: (213) 894-0141
    E-mail:    george.pence@usdoj.gov
               carley.palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-00595-RGK |
|---|---|
| Plaintiff, | TRIAL MEMORANDUM |
| v. | Trial Date: July 19, 2016 |
| | Trial Time: 9:00 a.m. |
| ANGELO HARPER JR., | Location: Courtroom of the Hon. R. GARY KLAUSNER |
| Defendant. | |

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES..........................................................iii

I.    CASE STATUS...............................................................1

II.   STATEMENT OF FACTS........................................................3

      A.    In January 2014, Defendant Admitted to Possessing
            Child Pornography...................................................3

      B.    In October 2015, SA McCall Learned that a Person with
            the Username CM8JIAW4 Was Advertising Child
            Pornography in the #NEPILOVERS Chatroom.............................4

      C.    Agent McCall Learned from Kik the IP Address from
            Which the CM8JIAW4 Account Was Accessed.............................6

      D.    Agent McCall Learned from TWC the Physical Address
            Associated with the Target IP......................................7

      E.    On October 13, 2016, Defendant Admitted That the
            CM8JIAW4 Account — the Same Account that Posted the
            Advertisement at Issue Here — Belonged to Him at the
            Time the Advertisement Was Posted..................................7

      F.    Defendant's Electronic Devices Contained the Child
            Pornography That He Posted on Kik..................................9

      G.    Defendant's Guilty Pleas...........................................9

III.  ELEMENTS OF THE OFFENSE..................................................10

IV.   EVIDENTIARY ISSUES......................................................13

      A.    Excerpts of Audio Recordings of Defendant's Statements...13

      B.    Photographs and Video Recordings...................................14

      C.    Displaying Child Pornography.......................................14

      D.    Online Conversations...............................................15

      E.    Business Records...................................................16

      F.    Expert Testimony...................................................16

      G.    Inextricably Intertwined Evidence..................................17

      H.    Evidence Offered Pursuant to Fed. R. Evid. 414 and, in
            the Alternative, Fed. R. Evid. 404(b)..............................18

i

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

I.    Authentication, Identification, and Chain of Custody.....19

J.    Government's Rebuttal...................................20

K.    Reciprocal Discovery and Affirmative Defenses...........21

L.    Cross-Examination of Defendant..........................22

M.    Character Witnesses.....................................23

V.   CONCLUSION..................................................24

1

<strong><u>TABLE OF AUTHORITIES</u></strong>

2

DESCRIPTION                                                    PAGE

3

**<u>CASES</u>**

4

<u>Campbell v. Kincheloe</u>, 829 F.2d 1453 (9th Cir. 1987)...............21

5

<u>Doe ex rel. Rudy-Glanzer v. Glanzer</u>, 232 F.3d 1258 (9th Cir.
    2000).........................................................19

6

7

<u>Fitzpatrick v. United States</u>, 178 U.S. 304 (1971).................22

<u>Gallego v. United States</u>, 276 F.2d 914 (9th Cir. 1960)............20

8

<u>Michelson v. United States</u>, 335 U.S. 469 (1948)...................23

9

<u>Reyes v. United States</u>, 383 F.2d 734 (9th Cir. 1967)...............20

10

<u>United States v. Aceves-Rosales</u>, 832 F.2d 1155 (9th Cir. 1987).....22

11

<u>United States v. Beltran-Rios</u>, 878 F.2d 1208 (9th Cir. 1989).......21

12

<u>United States v. Black</u>, 767 F.2d 1334 (9th Cir. 1985)..........20, 22

13

<u>United States v. Blackwood</u>, 878 F.2d 1200 (9th Cir. 1989)..........20

14

<u>United States v. Castillo</u>, 181 F.3d 1129 (9th Cir. 1999)..........23

15

<u>United States v. Chu Kong Yin</u>, 935 F.2d 990 (9th Cir. 1991).......20

16

<u>United States v. Collicott</u>, 92 F.3d 973 (9th Cir. 1996)...........13

17

<u>United States v. Cuevas</u>, 847 F.2d 1417 (9th Cir. 1988)............17

18

<u>United States v. Cuozzo</u>, 962 F.2d 945 (9th Cir. 1992).............22

19

<u>United States v. Daly</u>, 974 F.2d 1215 (9th Cir. 1992)..............18

20

<u>United States v. De Bright</u>, 730 F.2d 1255 (9th Cir. 1984) (en
    banc)........................................................20

21

22

<u>United States v. DeGeorge</u>, 380 F.3d 1203 (9th Cir. 2004)..........18

23

<u>United States v. Fernandez</u>, 839 F.2d 639 (9th Cir. 1988).........14

24

<u>United States v. Fleishman</u>, 684 F.2d 1329 (9th Cir. 1982).........17

25

<u>United States v. Gonzales</u>, 506 F.3d 940 (9th Cir. 2007) (en
    banc)........................................................18

26

27

<u>United States v. Grovo</u>, No. 15-30016, 2016 WL 3443691 (9th Cir.
    June 23, 2016)...............................................11

28

iii

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

DESCRIPTION                                                                    PAGE

3    United States v. Hardrick, 766 F.3d 1051 (9th Cir. 2014), cert.
         denied, 136 S. Ct. 61 (2015)...................................14
4
    United States v. Harrington, 923 F.2d 1371 (9th Cir. 1991).........20
5
    United States v. Kaiser, 660 F.2d 724 (9th Cir. 1981)..............20
6
    United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981).........13, 15
7
    United States v. Kinsey, 843 F.2d 383 (9th Cir. 1988).............17
8
    United States v. Matta-Ballesteros, 71 F.3d 754 (9th Cir. 1995)....20
9
    United States v. May, 622 F.2d 1000 (9th Cir. 1980)...............14
10
    United States v. Oaxaca, 569 F.2d 518 (9th Cir. 1978).............14
11
    United States v. Ortega, 203 F.3d 675 (9th Cir. 2000).............13
12
    United States v. Rowe, 414 F.3d 271 (2d Cir. 2005)................11
13
    United States v. Scholl, 166 F.3d 964 (9th Cir. 1999).............22
14
    United States v. Soliman, 813 F.2d 277 (9th Cir. 1987)............18
15
    United States v. Stearns, 550 F.2d 1167 (9th Cir. 1977)...........14
16
    United States v. VonWillie, 59 F.3d 922 (9th Cir. 1995).......15, 16
17
    United States v. Williams, 291 F.3d 1180 (9th Cir. 2002)..........18
18
    United States v. Woods, 684 F.3d 1045 (11th Cir. 2012)............19
19
    United States v. Young, 248 F.3d 260 (4th Cir. 2001)..............21
20
    **RULES**
21
    18 U.S.C. § 2251...............................................1, 11
22
    18 U.S.C. § 2252A..................................................1
23
    18 U.S.C. § 2256..............................................11, 12
24
    **CONSTITUTIONAL PROVISIONS**
25
    Fed. R. Evid. 1001................................................14
26
    Fed. R. Evid. 106.................................................13
27
    Fed. R. Evid. 404.............................................18, 23
28

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

Fed. R. Evid. 405...............................................23

Fed. R. Evid. 414...............................................19

Fed. R. Evid. 608...........................................22, 23

Fed. R. Evid. 702...............................................17

Fed. R. Evid. 703...............................................17

Fed. R. Evid. 704...............................................17

Fed. R. Evid. 801...........................................13, 15

Fed. R. Evid. 901...........................................19, 20

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2     Plaintiff United States of America, by and through its counsel
3 of record, the United States Attorney for the Central District of
4 California and Assistant United States Attorneys George E. Pence and
5 A. Carley Palmer, hereby files its Trial Memorandum.

6 **I.   CASE STATUS**

7     This case arises out of an indictment (Dkt. No. 11) charging
8 defendant Angelo Harper Jr. ("defendant") with advertisement of child
9 pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A), (e);
10 distribution of child pornography in violation of 18 U.S.C.
11 §§ 2252A(a)(2)(A), (b)(1); and possession of child pornography in
12 violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2).

13     On July 12, 2016, defendant pleaded guilty to Count Two,
14 distribution of child pornography, and Count Three, possession of
15 child pornography, and filed a Waiver of Trial by Jury and Waiver of
16 Special Findings of Fact, which the Court approved on July 13, 2016.
17 The sole charge at issue in this trial, therefore, is Count One,
18 advertisement of child pornography. The elements of this offense are
19 detailed below in Section III.

20     Trial of this case is scheduled for July 19, 2016. The
21 government estimates calling the following four witnesses in its
22 case-in-chief:

23     • Special Agent ("SA") Patrick McCall, who will testify about
24        his undercover investigation of the charged child
25        pornography advertisement. SA McCall will testify that he
26        visited an online chatroom, named "#NEPILOVERS," where
27        visitors shared pictures, videos, and messages of child
28        pornography by posting them to a digital wall, which was

visible to all of the other visitors to the chatroom —
similar to a group text message conducted between multiple
mobile phone users. In that chatroom, SA McCall found
evidence that another chatroom visitor, whose username was
"CM8JIAW4," had posted a text message in the chatroom on
August 26, 2015, advertising child pornography, and that
CM8JIAW4 also had posted images and a hyperlink to a video
of child pornography in that same chatroom between
August 26, 2015, and October 11, 2015. SA McCall's
investigation also uncovered evidence that CM8JIAW4 had
accessed Kik Messenger – the internet application that
hosted the #NEPILOVERS chatroom - from defendant's physical
address.

- SA Jonathan Ruiz, who will testify about executing a search
  warrant on October 13, 2015, at defendant's residence,
  where law enforcement interviewed defendant and seized
  defendant's electronic devices containing child
  pornography.

- Certified Forensic Analyst ("CFA") Oladele Salaam, who will
  testify about his forensic analysis of defendant's
  password-protected mobile phones, which uncovered child
  pornography that defendant posted in the #NEPILOVERS
  chatroom in furtherance of his advertisement.

- David Jones, an expert in the manipulation of digital
  images and videos, who will testify that images and a video
  posted by defendant in the #NEPILOVERS chatroom in
  furtherance of his advertisement depicted actual minors and

2

were not the result of compositing, morphing, or computer

generation.

The government anticipates that its case-in-chief will last two days.

Finally, the government has filed a motion *in limine*. The motion *in limine* seeks an order admitting, and permitting the publication of, a limited amount of child pornography at trial. The government anticipates filing a second motion *in limine* seeking an order admitting certain evidence on the grounds that it is direct evidence of the charged crime or otherwise admissible under the Federal Rules of Evidence, including Fed. R. Evid. 414 and Fed. R. Evid. 404(b).[1]

## II.   STATEMENT OF FACTS

### A.   In January 2014, Defendant Admitted to Possessing Child Pornography.

After investigating a tip from Dropbox – which provides online or "cloud" storage for computer files – that a Dropbox account contained child pornography, SA Dayna Roelfs obtained a warrant for defendant's residence in Moreno Valley, California (the "Subject Premises"). During the execution of that warrant on January 14, 2014, defendant told SA Roelfs that he had accessed child pornography online, including by using Dropbox. Law enforcement seized defendant's Dell desktop computer, among other electronic devices, and later uncovered child pornography on that computer. Defendant's possession of that child pornography was the basis for Count Three in the indictment (possession of child pornography), to which defendant pleaded guilty on July 12, 2016.

_____

[1] In addition, as of the date of the filing of this Trial Memorandum, defendant has filed a motion *in limine* seeking an order excluding evidence that defendant molested his niece.

3

**B.  In October 2015, SA McCall Learned that a Person with the Username CM8JIAW4 Was Advertising Child Pornography in the #NEPILOVERS Chatroom.**

The Kik Messenger application is a social media mobile device platform. Users download the mobile messaging application via an application service such as Google Play Store or Apple iTunes. Once downloaded and installed, the user is prompted to create an account and a username. The username acts as the primary account identifier. The user also has a display name, which is the name other users see when the user joins a chatroom, posts a message, or transfers an image or video file.

On October 8, 2016, SA McCall used an iPad to connect to the Internet and log onto an undercover Kik Messenger account. He then accessed the #NEPILOVERS chatroom, which was captioned, "All the things toddler n nepi." The toddler reference in the caption caused SA McCall to suspect that the chatroom was used to distribute child pornography. SA McCall later came to understand that the term "nepi" is derived from "nepiophilia," a subtype of pedophilia involving sexual preference for infants and toddlers.

After entering that chatroom, SA McCall found that on August 26, 2015, at approximately 11:01 a.m. (EST), a person with the username CM8JIAW4 and the display name Bobby Green advertised child pornography by posting the following comments to the #NEPILOVERS chatroom:

"Hi [smiley face emoji][2]"

---

[2] An "emoji" is a small digital picture or pictorial symbol that represents a thing, feeling, or concept, used in text messages and other electronic communications.

4

"U guys like toddler boys or girls?"

Then, at approximately 11:13 a.m. (EST), CM8JIAW4 posted the comment, "I have pics and vids of both [winking face emoji]."

At 11:55 a.m. (EST), CM8JIAW4 posted two more images of sexually explicit conduct involving a minor. One of those images shows, underneath its infant subject, a piece of paper displaying the message "WAN2TR."[3]

Then, at approximately 1:00 p.m. (EST), CM8JIAW4 posted the comment: "I have tons of pics and vids of little boys and girls. Pm[4] me for chat and trade of kids under 6 [winking face emoji]."

On October 7, 2015, between approximately 9:40 p.m. (EST) and 11:25 p.m. (EST) CM8JIAW4 again joined the #NEPILOVERS chatroom to advertise child pornography by posting comments and images and a video.

Specifically, at approximately 9:40 p.m. (EST), CM8JIAW4 posted the comment "Hello [smiley face emoji] I'm liking the name of this group [heart emoji]." At approximately 9:46 p.m., CM8JIAW4 posted a hyperlink to a video file of sexually explicit conduct involving an adult male and toddler found in "pCloud," which is an online, file-storage application. Thereafter, at approximately 10:07 p.m. (EST), CM8JIAW4 posted three images of sexually explicit conduct involving an adult male and an infant. Then, at approximately 10:32 p.m. (EST),

---

[3] The message "WAN2TR" possibly reads in full "WAN2TRADE"; but the remaining letters in that message, if any, are obscured in the image.

[4] The term "PM" is an idiomatic expression meaning "private message." The Kik application allows users to exchange private messages that are not disclosed to other participants in the chatroom.

1  CM8JIAW4 posted the comment "U guys like?" to the group, to which an
2  unidentified user replied, "Yeah."
3      On October 11, 2015, at approximately 1:13 a.m. (EST), CM8JIAW4
4  against advertised child pornography by posting four sexually
5  explicit images of infants and one comment to the #NEPILOVERS
6  chatroom. After posting the fourth image to the group, CM8JIAW4
7  posted the comment "Enjoy [winking face emoji]."
8      **C.   Agent McCall Learned from Kik the IP Address from Which the**
       **CM8JIAW4 Account Was Accessed.**
9
10     On October 8, 2015, SA McCall sent an administrative summons to
11 Kik, requesting that Kik produce certain information related to the
12 CM8JIAW4 account, including information about the IP addresses that
13 had been used to access the account during the previous thirty days.
14 An "IP address" is like a street address for computers – it is a code
15 that identifies a computer network or a particular computer or other
16 device on a network, consisting of four numbers separated by periods.
17     On October 12, 2015, in response to the summons, Kik provided
18 the requested information. The login records showed that between
19 September 13, 2015, and October 11, 2015, the Kik messenger account
20 CM8JIAW4 was accessed approximately 28 times. Each time the account
21 was accessed, the user did so from the IP address 104.175.141.234
22 ("Target IP").
23     SA McCall thereafter queried the Maxmind.com website, a
24 publically accessible Internet database that is regularly used by law
25 enforcement to identify the owners of IP addresses, and learned that
26 the Target IP was registered to the Internet Service Provider ("ISP")
27 Time Warner Cable ("TWC").
28

**D.   Agent McCall Learned from TWC the Physical Address Associated with the Target IP.**

On October 13, 2015, SA McCall sent an administrative summons to TWC. ISPs, such as TWC, assign IP addresses dynamically, and thus may assign an IP address to a particular customer's network-equipped hardware on a temporary basis. The TWC summons therefore requested that TWC produce subscriber information for the Target IP used on October 7, 2015, at 10:07 p.m. (EST), which was the date and time CM8JIAW4 used the Target IP to advertise and post images of child pornography described above to the #NEPILOVERS chatroom.

On October 13, 2015, in response to the TWC summons, TWC reported that the Target IP had been assigned to the Subject Premises and that the account holder for the Subject Premises was apparently defendant's father, who is also named Angelo Harper.[5]

**E.   On October 13, 2016, Defendant Admitted That the CM8JIAW4 Account — the Same Account that Posted the Advertisement at Issue Here — Belonged to Him at the Time the Advertisement Was Posted.**

On October 13, 2015, the Hon. David T. Bristow, U.S. Magistrate Judge, issued a Search and Seizure Warrant for the Subject Premises, the house where defendant lived, specifying items to be seized, which included digital devices.

Later that day, SA Ruiz and other law enforcement officers executed the warrant and searched the Subject Premises. During the search, the government seized several electronic devices, including

---

[5] On or about January 16, 2014, defendant told SA Roelfs that his parents were responsible for establishing the TWC account and for paying for internet services at the Subject Premises. Furthermore, TWC reported "Angelo Harper," not "Angelo Harper Jr.," as the account holder.

four thumb drives, three mobile phones, one desktop computer, one laptop computer, an external hard drive, and a memory card.

The government also obtained statements from defendant, his father, his mother, and his sister. Specifically, defendant admitted the following facts:

(1) Defendant was sexually attracted to toddlers and infants;

(2) The CM8JIAW4 account belonged to defendant, and had belonged to him for at least six months;

(3) Defendant had another Kik username, "FILMMONEYMUSIC." He used that account to transmit child pornography to his CM8JIAW4 username, which was the username he used to trade child pornography;

(4) Defendant obtained the pornography that he displayed using Kik from particular websites – namely "Tor" and "boyvids 4.0";

(5) With his HTC Evo Shift smartphone, defendant would photograph child pornography while it was displayed on his iPhone, and then transmit the photograph to the #NEPILOVERS chatroom via Kik;

(6) Using the CM8JIAW4 username, defendant posted at least one image of child pornography in the #NEPILOVERS chatroom via Kik;

(7) Defendant's iPhone contained the pCloud application, discussed above, which defendant used to access child pornography, and defendant knew there to be child pornography in the pCloud application on his iPhone;

(8) Defendant knew child pornography was illegal;

(9) Defendant believed that the child pornography on his electronic devices depicted real children;

(10) Defendant molested his infant niece on at least two occasions, including by taking photographs of his erect penis while

it was placed on her genitals, ejaculating on her face, placing his penis on her mouth, licking her vagina, and touching her anus.

### F.   Defendant's Electronic Devices Contained the Child Pornography That He Posted on Kik.

CFA Salaam conducted a forensic analysis of the electronic devices seized from defendant. His investigation uncovered on defendant's iPhone child pornography images that are either identical to, or closely resemble, those that CM8JIAW4 posted on Kik. Some of the images posted on Kik are slightly askew and show black borders. This difference appears to be accounted for by defendant's statement to SA Ruiz, discussed above, that defendant used his HTC Evo Shift phone and his iPhone in tandem to post child pornography to the #NEPILOVERS chatroom.

In addition, CFA Salaam found on a memory card in defendant's HTC Evo Shift phone segments of the child pornography video that defendant posted a hyperlink to in the #NEPILOVERS chatroom.

### G.   Defendant's Guilty Pleas

On July 12, 2016, defendant pleaded guilty to Count Two (distribution of child pornography) and Count Three (possession of child pornography) in the indictment. Specifically, defendant admitted to the following factual basis for these crimes:

- Count 2: On or about October 7, 2015, in Riverside County, within the Central District of California, defendant knowingly distributed a video which he knew contained a visual depiction of a minor engaged in sexually explicit conduct, over the internet, a means and facility of interstate and foreign commerce, using the Kik messaging application. Defendant knew the video contained matters showing minors engaged in sexually

9

explicit conduct and that the production of the video involved the use of a minor engaged in sexually explicit conduct. The video had been transported in interstate or foreign commerce by computer.

- <u>Count 3</u>: On or about January 16, 2014, in Riverside County, in the Central District of California, defendant knowingly possessed an image that depicted a minor engaged in sexually explicit conduct. Defendant knew that the image was of a minor engaged in sexually explicit conduct and that the production of the image involved the use of a minor engaged in sexually explicit conduct. The image had been transported in interstate or foreign commerce by computer.

**III. ELEMENTS OF THE OFFENSE**

The defendant is charged in Count One of the indictment with sexual exploitation of a child in violation of Section 2251(d)(1)(A), (e) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly made, printed, published, or caused to be made, printed, or published, an advertisement;

Second, the advertisement offered to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction, if the production of the visual depiction utilized a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; and

Third, the defendant knew or had reasons to know the advertisement would be transported across state lines or mailed, or

1  such advertisement was actually transported across state lines or

2  mailed.

3  Ninth Circuit Model Criminal Jury Instruction No. 8.183 (2010)

4  (Sexual Exploitation of Child—Notice of Advertisement Seeking or

5  Offering) (modified to reflect that crime does not require proof of

6  the identity of a particular minor victim).

7      In this case, a "visual depiction" includes undeveloped film

8  and videotape, data stored on computer disk or by electronic means

9  which is capable of conversion into a visual image, and data which

10 is capable of conversion into a visual image that has been

11 transmitted by any means, whether or not stored in a permanent

12 format. 18 U.S.C. § 2256(5); Ninth Circuit Model Criminal Jury

13 Instruction No. 8.185 (2010) (Sexual Exploitation of Child—

14 Possession of Child Pornography) (definitions).

15     A "minor" is any person under the age of 18 years. Ninth

16 Circuit Model Criminal Jury Instruction No. 8.185 (2010)

17 (definitions).

18     "Advertisement" means a posting that has the purpose of

19 advising others that child pornography is available. United States

20 v. Grovo, No. 15-30016, -- F.3d --, 2016 WL 3443691, at *8 (9th Cir.

21 June 23, 2016) ("The means of publication or broadcast are not the

22 definitive features of an 'advertisement,' so long as the

23 advertisement calls attention to its subject or makes a particular

24 thing known."). An advertisement need not specifically state it

25 offers or seeks a visual depiction of a minor engaging in sexually

26 explicit conduct. United States v. Rowe, 414 F.3d 271, 277 (2d Cir.

27 2005) (Title 18, United States Code, section 2251(c) (now codified

28 at 18 U.S.C. § 2251(d)) "is not so narrow that it captures only

11

1  those who state, 'I have child-pornographic images for trade.'");

2  <u>Grovo</u>, 2016 WL 3443691, at *9 (citing <u>Rowe</u> approvingly).

3       "Sexually explicit conduct" means actual or simulated sexual

4  intercourse, including genital-genital, oral-genital, anal-genital,

5  or oral-anal, whether between persons of the same or opposite sex;

6  bestiality; masturbation; sadistic or masochistic abuse; or

7  lascivious exhibition of the genitals or pubic area of any person.

8  18 U.S.C. § 2256(2)(A) (defining "sexually explicit conduct"); Ninth

9  Circuit Model Criminal Jury Instruction No. 8.185 (2010)

10 (definitions).

11      The Ninth Circuit's recent decision in <u>Grovo</u> is instructive. In

12 <u>Grovo</u>, defendants were convicted of engaging in a child exploitation

13 enterprise under 18 U.S.C. § 2252A(g) and conspiracy to advertise

14 child pornography under 18 U.S.C. § 2251(d). Defendants' convictions

15 arose from their involvement in an invitation-only, online message

16 board for sharing child pornography and non-pornographic images of

17 children. Defendants posted links to child pornography on these

18 message boards, accompanied by text messages such as "hot LS vid"

19 (referring to a popular child pornography producer, LS Studios), "LS

20 at its best [smiley face emoji]," and "Oceane Dreams—Sets 1 through

21 27" (referring to a popular underage model).

22      On appeal, defendants argued that these postings did not

23 constitute advertisements as a matter of law, because they were not

24 published in the press or broadcast over the air, and were not

25 otherwise publically and generally known. The Ninth Circuit

26 disagreed. Citing various dictionary definitions of "advertisement,"

27 the Ninth Circuit held that an advertisement "need not necessarily

28 be published in the press or broadcast over the air." <u>Grovo</u>, 2016 WL

1    3443691, at *8. Moreover, the Court further held that "something may

2    be public even though it is directed only to a subset of the

3    population as a whole," and that defendants' postings to the closed

4    community of 40 to 45 individuals on the message boards was

5    sufficient to support their conviction. Id.

6    **IV.  EVIDENTIARY ISSUES**

7         **A.   Excerpts of Audio Recordings of Defendant's Statements**

8         The government intends to introduce excerpts of audio recordings

9    of defendant's October 13, 2015, interview by law enforcement.

10   Defendant's own statements, as party admissions, are not hearsay.

11   Fed. R. Evid. 801(d)(2)(A). The statements of other parties to these

12   conversations – that is, the agents – are either admissible as

13   (1) defendant's adopted statements or party admissions; or (2)

14   statements not offered for their truth, but rather to provide

15   necessary context to defendant's statements. Fed. R. Evid.

16   801(d)(2)(B); United States v. Kenny, 645 F.2d 1323, 1340 (9th Cir.

17   1981).

18        The government does not intend to introduce every statement made

19   during this interview, only certain relevant ones. It is entirely

20   proper to admit parts of statements, so long as such statements are

21   not presented, out of context, in a way that is misleading. Fed. R.

22   Evid. 106; United States v. Collicott, 92 F.3d 973, 983 (9th Cir.

23   1996). When the government introduces a portion of a defendant's

24   statement, the defendant may not put in additional out-of-court

25   statements made by him, because they are hearsay. United States v.

26   Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (defendant prohibited from

27   eliciting his own exculpatory statements during cross-examination of

28

government agent) (quoting United States v. Fernandez, 839 F.2d 639, 650 (9th Cir. 1988)).

**B.    Photographs and Video Recordings**

At trial, the government intends to introduce photographs and videos of child pornography that defendant posted in the #NEPILOVERS chatroom and that were seized from defendant's smartphones. Photographs and videos are generally admissible as evidence. United States v. Hardrick, 766 F.3d 1051, 1056 (9th Cir. 2014), cert. denied, 136 S. Ct. 61 (2015) (admitting uncharged child pornography videos); United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible). Such images and videos should be admitted so long as they fairly and accurately represent the event or object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980). "Photographs" include video recordings. Fed. R. Evid. 1001(2).

**C.    Displaying Child Pornography**

The government has filed a motion *in limine* to admit, and to permit the publication of, certain images and video excerpts of child pornography that are highly relevant to the conduct charged in the indictment. In addition to this child pornography, the government also intends to offer and publish sanitized child pornography images, in connection with testimony about what is contained in the full exhibits, as well as testimony that defendant posted those images to the Kik #NEPILOVERS chatroom using his CM8JIAW4 username. Further, the government intends to offer testimony regarding the contents and filenames of certain videos or images not displayed. These measures

are intended to reduce the Court's exposure to actual depictions of child pornography while enabling the government to present its case.

### D. Online Conversations

The government intends to introduce online conversations regarding child pornography and sexual interest in children, in which defendant participated. Defendant's own statements, as party admissions, are not hearsay. Fed. R. Evid. 801(d)(2)(A). The statements of other parties to these conversations are either admissible as (1) defendant's adopted statements or party admissions; or (2) statements not offered for their truth, but rather to provide necessary context to defendant's statements. Fed. R. Evid. 801(d)(2)(B); Kenny, 645 F.2d at 1340.

Furthermore, the government intends to offer the testimony of SA McCall about idiomatic expressions used by participants, including defendant, in these online conversations. Specifically, SA McCall will testify that (1) the term "Pm" invited a "private message" conversation to be held between participants outside the presence of the entire group, (2) the phrase "WAN2TR" invited other members to trade or exchange child pornography images or videos, and (3) the term "#NEPILOVERS" indicated that the chatroom involved the exchange of child pornography among persons with a sexual preference for infants and toddlers. This testimony is based on the agents' knowledge, training, and experience investigating child pornography crimes online.

Under Ninth Circuit law, opinion testimony by law enforcement officers is not necessarily expert testimony within the meaning of Rule 16(a)(1)(G). In United States v. VonWillie, 59 F.3d 922 (9th Cir. 1995), for instance, the Ninth Circuit held that the district

15

1    court properly admitted testimony by a law enforcement agent that

2    drug traffickers commonly used weapons "to protect their drugs and to

3    intimidate buyers" as lay testimony. Id. at 929. The officer's

4    observations, based on his experience "during prior drug

5    investigations," the Court stated, "are common enough and require

6    such a limited amount of expertise, if any, that they can, indeed, be

7    deemed lay witness opinion." Id. Although the government does not

8    believe that the testimony of SA McCall is required to be disclosed

9    in advance of trial, out of an abundance of caution, the government

10   hereby gives notice of its intent to use his expert testimony under

11   Federal Rules of Evidence 702, 703, and 705.

12       **E.   Business Records**

13       The government intends to introduce business records from:

14   (1) Kik, showing the IP address and login activity associated with

15   the CM8JIAW4 username, and (2) TWC, showing the physical address

16   associated with that IP address. On July 3, 2016, the government gave

17   defendant's counsel written notice of its intent to offer these

18   records. Furthermore, the government has filed a notice requesting

19   that the Court admit these records. (Dkt. No. 44.)

20       **F.   Expert Testimony**

21       The government intends to offer expert testimony to assist the

22   trier of fact in resolving certain disputed factual questions at

23   trial. Specifically, the government intends to call CFA Salaam, who

24   analyzed digital devices seized from defendant's residence, and David

25   Jones, who will testify that certain images and a video posted to the

26   #NEPILOVERS chatroom by defendant depicted actual children and were

27   not the result of compositing, morphing, or computer generation. The

28

government has notified defendant's counsel of its intention to call these witnesses.

Admission of expert testimony is generally a matter within the broad discretion of the trial judge; it will not be disturbed unless it is manifestly erroneous. United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir. 1988); United States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988) (overruled on other grounds); United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982) (overruled on other grounds). If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. An expert's opinion may be based on hearsay or facts not in evidence, when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert's opinion may embrace an ultimate issue to be decided by the trier of fact, as long as this issue does not pertain to the ultimate question of defendant's mental state. Fed. R. Evid. 704; Fleishman, 684 F.2d at 1335.

### G.    Inextricably Intertwined Evidence

Part of the government's expected presentation will involve evidence regarding the nature of materials (a) found in defendant's possession on October 13, 2015, as discovered by CFA Salaam during his forensic examination of defendant's electronic devices, and (b) distributed by defendant online, specifically in the #NEPILOVERS chatroom on October 7, 2015. This evidence is "inextricably intertwined" with the charged conduct and is highly probative of defendant's intent when he posted his August 26, 2015, message in the

17

#NEPILOVERS chatroom inviting others to "chat and trade of kids under 6."

Evidence that is "inextricably intertwined" with the charged conduct is admissible without regard to the requirements of Federal Rule of Evidence 404(b). United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the other act and the evidence concerning the crime are inextricably intertwined'") (citations omitted); United States v. Williams, 291 F.3d 1180, 1189 (9th Cir. 2002) (overruled on other grounds by United States v. Gonzales, 506 F.3d 940, 945 (9th Cir. 2007) (en banc)). "Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as the basis for the criminal charge' or 'was necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" Id. (citations omitted); see also United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) ("evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted" to "put [defendant's] illegal conduct into context and to rebut his [defense].") ; accord United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004).

**H. Evidence Offered Pursuant to Fed. R. Evid. 414 and, in the Alternative, Fed. R. Evid. 404(b).**

At trial, the government intends to introduce testimony regarding (1) defendant's admission at the July 12, 2016, change-of-plea hearing to possessing child pornography in 2014, (2) defendant's admission -- to law enforcement on October 13, 2016, and at the change-of-plea hearing -- to possessing and distributing child pornography in 2015, and (3) defendant's admission to law enforcement

on October 13, 2015, that he molested his infant niece. The government anticipates filing a motion *in limine* concerning this subject matter.

As described in greater detail in the government's motion, evidence of child molestation is admissible as relevant evidence in the government's case in chief in child pornography cases. Fed. R. Evid. 414(a) ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."); Fed. R. Evid. 414(d) (defining child pornography offenses, which are contained in chapter 110 of title 18 of the U.S. criminal code, as "offense[s] of child molestation"); United States v. Woods, 684 F.3d 1045, 1064 (11th Cir. 2012) (child pornography offenses qualify as "offenses of child molestation" for the purposes of Rule 414). Importantly, a permissible, relevant purpose under Rule 414 includes the purpose of showing defendant's propensity to commit the charged offense. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1268 (9th Cir. 2000). Moreover, in this case, such evidence is also highly probative of defendant's identity as the online advertiser of this child pornography. This evidence also satisfied the requirements of Rule 404(b) because it is probative of defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

I.    **Authentication, Identification, and Chain of Custody**

Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to

1  admissibility is satisfied by evidence sufficient to support a

2  finding that the matter in question is what its proponent claims."

3      Rule 901(a) only requires the government to make a prima facie

4  showing of authenticity or identification "so that a reasonable juror

5  could find in favor of authenticity or identification." United States

6  v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United States v.

7  Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United States v.

8  Black, 767 F.2d 1334, 1342 (9th Cir. 1985). Once the government meets

9  this burden, "the credibility or probative force of the evidence

10 offered is, ultimately, an issue for the jury." Black, 767 F.2d at

11 1342.

12     In establishing chain of custody as to an item of physical

13 evidence, the government is not required to call all persons who may

14 have come into contact with the piece of evidence. Reyes v. United

15 States, 383 F.2d 734 (9th Cir. 1967); Gallego v. United States,

16 276 F.2d 914, 917 (9th Cir. 1960). Moreover, a presumption of

17 regularity exists in the handling of exhibits by public officials.

18 United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981); United

19 States v. De Bright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc);

20 United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

21 Gaps or defects in chain of custody go to the weight of the evidence

22 rather than its admissibility. United States v. Matta-Ballesteros,

23 71 F.3d 754, 769-70 (9th Cir. 1995).

24     **J.   Government's Rebuttal**

25     At this time, the defendant has not indicated any potential

26 defense, so the government cannot anticipate what, if any, evidence

27 he might seek to introduce on rebuttal. In a criminal prosecution,

28 the government may introduce otherwise inadmissible evidence when the

20

1   defendant "opens the door" by introducing potentially misleading

2   testimony. <u>United States v. Beltran-Rios</u>, 878 F.2d 1208, 1212

3   (9th Cir. 1989). <u>Cf.</u> <u>Campbell v. Kincheloe</u>, 829 F.2d 1453, 1462-63

4   (9th Cir. 1987) (finding that defense counsel's failure to present

5   mitigating evidence, including that defendant had an alcoholic

6   father, was the victim of child abuse, suffered from various medical

7   problems, had a history of drug and alcohol abuse, had attempted

8   suicide, and was the father of two children, was reasoned strategic

9   choice because the admission of such evidence would have "opened the

10  door" to evidence that defendant had forcibly raped his ex-wife,

11  repeatedly raped fellow inmates, was involved in drug-and-alcohol-

12  induced violence, and was involved in sexually abhorrent conduct with

13  children and animals), <u>cert.</u> <u>denied</u>, 488 U.S. 948 (1988).

14      **K.   Reciprocal Discovery and Affirmative Defenses**

15      Defendant has not produced to the government any reciprocal

16  discovery to which the government may be entitled under Rules 16(b)

17  and 26.2 of the Federal Rules of Criminal Procedure. Defendant has

18  not given notice of any intent to rely on any defenses of mental

19  incapacity, duress, or alibi. Nor has any defendant given notice of

20  his intent to rely on any defense of entrapment. Thus, defendant has

21  not given notice of any intent to rely on any defenses requiring

22  notice pursuant to Rules 12.1, 12.2, or 12.3 of the Federal Rules of

23  Criminal Procedure. In addition, defendant also has not provided

24  notice that he intends to call any expert witnesses.

25      To the extent defendant attempts to introduce or use any

26  documents at trial that he has not produced, or seeks to rely on an

27  undisclosed affirmative defense, the government reserves the right to

28  object and to request that the Court exclude defendant's undisclosed

documents or affirmative defense. United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding Rule 16 exclusion of audiotape evidence that defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime); United States v. Aceves-Rosales, 832 F.2d 1155, 1156-58 (9th Cir. 1987) (excluding evidence under defendant's control, but not in his possession, where prosecutor was not notified of evidence until after government rested); United States v. Scholl, 166 F.3d 964, 964 (9th Cir. 1999) (per curiam)(upholding exclusion of evidence that defense chose not to disclose to government until after jury was sworn).

**L.   Cross-Examination of Defendant**

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. See, e.g., Fitzpatrick v. United States, 178 U.S. 304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'") (citation omitted). The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination. United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

1    Along with impeachment of defendant's credibility pursuant to

2  Federal Rule of Evidence 608(b), specific prior acts can be used to

3  impeach defendant by contradiction, and may be proven using extrinsic

4  evidence. E.g., United States v. Castillo, 181 F.3d 1129, 1132-34

5  (9th Cir. 1999) ("[D]irect-examination testimony containing a broad

6  disclaimer of misconduct sometimes can open the door for extrinsic

7  evidence to contradict even though the contradictory evidence is

8  otherwise inadmissible under Rules 404 and 608(b).") (internal

9  citation omitted).

10   **M.   Character Witnesses**

11   As a general rule, character witnesses called by the defendant

12  may not testify about specific acts demonstrating a particular trait

13  or other information acquired only by personal observation and

14  interaction with the defendant. Michelson v. United States, 335 U.S.

15  469, 477 (1948). Rather, the witness must be limited to summarizing

16  the reputation of the defendant as known in the community. Id. On

17  cross-examination of a defendant's character witness, however, the

18  government may inquire into specific instances of defendant's past

19  conduct relevant to the character trait at issue.

20  Fed. R. Evid. 405(a). In particular, a defendant's character

21  witnesses may be cross -examined about their knowledge of the

22  defendant's past crimes, wrongful acts, and arrests. Id. at 477.

23

24

25

26

27

28

**V.    CONCLUSION**

    The government respectfully requests leave to file such supplemental memoranda as may become necessary before or during trial.


Dated: July 14, 2016              Respectfully submitted,

                                  EILEEN M. DECKER
                                  United States Attorney

                                  LAWRENCE S. MIDDLETON
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  GEORGE E. PENCE
                                  A. CARLEY PALMER
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA