```
                    UNITED STATES DISTRICT COURT

          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

            HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE



UNITED STATES OF AMERICA,          )
                                   )
                    PLAINTIFF,     )
                                   )
          vs.                      ) No. CR 15-00595-RGK
                                   )
ANGELO HARPER, JR.,                )
                                   )
                    DEFENDANT.     )

            REPORTER'S TRANSCRIPT OF MOTION TO SUPPRESS
                      LOS ANGELES, CALIFORNIA
                       TUESDAY, JULY 12, 2016
                            10:05 A.M.

APPEARANCES:

FOR PLAINTIFF:        OFFICE OF THE UNITED STATES ATTORNEY
                      BY:  GEORGE E. PENCE, IV
                           ANNE CARLEY PALMER
                           THOMAS STOUT
                           ASSISTANT UNITED STATES ATTORNEYS
                      312 NO. SPRING STREET
                      LOS ANGELES, CALIFORNIA  90012
                      213.894.2253; 213.894.0282

FOR DEFENDANT:        FEDERAL PUBLIC DEFENDER'S OFFICE
                      BY:  RACHEL A. ROSSI
                           DEPUTY FEDERAL PUBLIC DEFENDER
                      321 EAST 2ND STREET
                      LOS ANGELES, CALIFORNIA  90012
                      213.894.4406


      _____

            SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
         Official Court Reporter, U.S. District Court
            255 East Temple Street, Room 181-F
                   Los Angeles, CA  90012
                       213.894.5949
```

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, JULY 12, 2016

 2                              10:05 A.M.

 3                               - - - -

 4              THE CLERK:  Calling calendar item No. 1, case

 5   No. Criminal 15-595-RGK, United States of America versus

 6   Angelo Harper, Jr.

 7        Counsel, please state your appearances.

 8              MR. PENCE:  George Pence for the United States,

 9   Your Honor.

10              MS. PALMER:  Good morning, Your Honor.  Carley Palmer

11   for the United States.  And with us at counsel table is Tom

12   Stout.

13              THE COURT:  Thank you.

14              MS. ROSSI:  Good morning, Your Honor.  Rachel Rossi,

15   deputy federal public defender, with Angelo Harper, Jr., who is

16   present in custody.

17              THE COURT:  Thank you, Counsel.

18        This is set for a hearing today.  The Court has, by the

19   way, read and considered the documents that have been supplied

20   to the Court, that being the motion itself, the opposition to

21   the motion, the reply to the opposition to the motion, and this

22   is the time set for a hearing.  So hearing would be --

23        Counsel, are there going to be any witnesses called?

24              MR. PENCE:  There will not, Your Honor.  There was a

25   stipulation at the last hearing that there would be no
```

1  witnesses called at this hearing; there would be simply oral
2  argument, if the Court would --
3          THE COURT:  That's okay with both sides?
4          MS. ROSSI:  Your Honor, we did maintain a request for
5  a *Franks* hearing, but we believe, based off of the papers, that
6  the defense burden was met and that the government has not met
7  its burden, so we do not think that --
8          THE COURT:  Wait, wait, wait, wait.  My question only
9  is, is there going to be any evidence produced at this hearing
10 that's before us today?
11         MS. ROSSI:  No, Your Honor.
12         THE COURT:  So you want to argue, both sides?
13         MS. ROSSI:  Yes.
14         MR. PENCE:  Yes, Your Honor.
15         THE COURT:  Okay.  Just want to make sure we're where
16 we should be.
17         MR. PENCE:  Thank you, Your Honor.
18         THE COURT:  And Counsel, what you're saying is, you
19 feel that you have presented your argument in the papers, and
20 you want to put it over to them to rebut it?
21         MS. ROSSI:  Yes, Your Honor.
22         THE COURT:  Okay.
23    Counsel, do you have any rebuttal on it?
24         MR. PENCE:  Certainly, Your Honor.
25    I would like to respond to several points that were raised

1  in the reply brief, just to clarify the issues that are before
2  the Court.
3           THE COURT:  Okay.
4           MR. PENCE:  First, that the defendant has not made the
5  prima facie case that's required under *Franks*.  Now, the prima
6  facie case requires that the defendant show that there was
7  information material to the finding of probable cause that was
8  either intentionally or recklessly omitted from the warrant
9  application.
10      The only information that the defendant claims was omitted
11 was a citation to 18 USC 1509.  That's it.  There is absolutely
12 no evidence that that citation was intentionally omitted by
13 Agent Ruiz from the warrant application.  So then the question
14 becomes whether that citation was recklessly omitted.  And as
15 we all know, recklessness is a standard that requires that
16 there be a showing of deviation, a gross deviation from the
17 reasonable person or prudent standard of care.
18      Here, the defendant has not established that there is any
19 standard of care that would require a warrant affiant to supply
20 the precise statutory citation, Section 1509, in a warrant
21 application, much less that the failure to include that
22 citation rises to the level of a gross deviation from the
23 standard of care.
24      So at the very outset, the defendant has not established
25 their prima facie case, and it remains defendant's burden to

1 establish that the warrant was not supported by probable cause.
2 That is the burden that the defendant cannot carry, Your Honor.
3     First, I'd like to talk about the actual statute, 1509,
4 and walk the Court through it, because walking the Court
5 through that statute will show beyond any doubt that the
6 statute permitted precisely the customs summons that was issued
7 in this case.
8     Section 1509(a) delineates certain investigatory powers
9 that ICE agents have.  1509(a)(2)(D) specifies that one of
10 those powers is to issue a summons to any person to produce
11 records as defined in Section (d)(1)(A).  So then the question
12 becomes, what records is an ICE agent permitted to summons from
13 a person?  Well, (d)(1)(A)(ii) says that those records include
14 records regarding which there is probable cause to believe that
15 they pertain to merchandise, the importation of which is
16 prohibited in the United States.
17     So we know that the government -- that ICE agents are
18 authorized to issue summons.  We know that those summons can
19 request records and that those records are properly subject to
20 the summons if they pertain to illegally imported merchandise.
21 So the question is whether or not the information that was
22 summoned here, defendant's father's subscriber information,
23 constitutes merchandise within that definition.  And the
24 United States Customs and Border Protection has issued a
25 decision that has interpreted that word, "merchandise," to

1  encompass electronically transmitted information, which is
2  precisely the information that was summonsed from Time Warner
3  Cable, is precisely the information that is the subject of
4  ICE's investigation, which is the electronic distribution of
5  child pornography.
6  So then the last question we face with respect to the
7  statutory interpretation is whether the investigation of child
8  pornography crimes falls within the scope of ICE's
9  investigatory authority. And case law cited in the
10 government's brief clearly establishes that the answer to that
11 question is yes.
12 Historical legacy of ICE's investigatory powers relate
13 back to times when child pornography was printed and imported
14 to the United States, and Customs and Border Patrol officers
15 would have to investigate the actual importation of printed
16 material. With the advent of the Internet age, the scope of
17 ICE's investigatory jurisdiction has changed to encompass the
18 new ways that child pornography is imported into the
19 United States, which is through electronic transmission over
20 the Internet.
21 So, Your Honor, I submit that the issuance of the Time
22 Warner subpoena in this case by Agent McCall was entirely
23 proper.
24 The next -- and I'd also submit, Your Honor, that every
25 court that has addressed this issue, every single one, has

1  agreed.  The defendant cannot cite a single case from any court
2  in any jurisdiction or any other authority, even in a treatise,
3  that would support the proposition that the issuance of a
4  summons pursuant to Section 1509 was improper.
5     So then I'd also like to address the Fourth Amendment
6  argument that the defendant raises.
7     The exclusionary rule and the suppression of evidence is a
8  rule that is very seldom invoked, and it is an extreme and
9  drastic remedy, and that remedy is only invoked in rare cases
10 where there is an underlying constitutional violation or where
11 there is a statutory violation and the statute expressly calls
12 for suppression as a remedy.  Neither of those circumstances
13 are present here.
14     The defense essentially concedes the point, by not arguing
15 it, that the information that Time Warner Cable had was not
16 within the privacy rights or privacy interests of defendant's
17 father.
18     There is a long history of United States Supreme Court
19 case law and Ninth Circuit case law that establish that IP
20 information, subscriber information, because it's provided to a
21 third party, is not within the defendant's privacy interest,
22 and therefore, the investigation of that information does not
23 trigger any Fourth Amendment application.  So there was no
24 constitutional right violated, either a constitutional right
25 either of the defendant's father or of defendant himself, by

1   the obtaining of that information from the subscriber.  So then
2   the question is whether the statute has a remedy that requires
3   suppression of evidence obtained thereby, and there simply is
4   no requirement under Section 1509 that evidence obtained
5   through that statute be suppressed.
6        So in this case, we have no constitutional violation of
7   defendant's rights, we have no constitutional violation of
8   defendant's father's rights, and we don't have a statute that
9   calls for suppression.  Under these circumstances, it is
10  abundantly clear that suppression, even if there were a
11  statutory violation, and there was not, is not the appropriate
12  remedy.
13       Finally, I would like to address what essentially is a
14  fallback position, which is that the good faith exception to
15  the rule of exclusion would apply here.  That exception applies
16  where a officer, an agent, makes a warrant application in good
17  faith and that -- and there are certain carve-outs from that
18  rule, none of which defendant argues applies here.  So the
19  question is whether that warrant application and the mere
20  omission of Section 1509 as a citation was a good faith act or
21  conduct on the part of the affiant agent.
22       There is absolutely no authority that the defendant can
23  point to that would indicate that providing that information in
24  a warrant is something that's necessary, reasonably required,
25  prudent, anything along those lines.  And as a result, the mere

1   omission of that information does not raise a specter of a
2   presumption of bad faith on the part of the warrant affiant,
3   and the government is entitled to this presumption of good
4   faith in the application of -- in its warrant applications.  In
5   fact, it's also telling that again there is absolutely no
6   authority that would have led the affiant agent to believe that
7   the omission of that information was improper, because there is
8   not a single case that the defendant can cite that says 1509
9   summonses issued to electronic service -- internet service
10  providers are improper.
11      So for all of those reasons, Your Honor, the defendant's
12  motion should be denied.  Thank you.
13          THE COURT:  Counsel, before I go to the defense, I
14  really feel the crux of the defendant's argument is -- and if I
15  misspeak, let me know -- is not so much the Fourth Amendment,
16  but that the warrant itself is invalid because information was
17  withheld, that if that information had -- intentionally
18  withheld or recklessly withheld; would that information, if
19  known by the judge, may have resulted in a different ruling of
20  the judge as far as whether or not to issue a warrant.  I think
21  that's the crux of it.  And I think that you probably would
22  agree, and correct me if I'm wrong, that if the officer knew
23  that the information concerning -- either knew or should have
24  known that the information concerning that summons was
25  improper, that the summons would be improper, and either

1   recklessly or deliberately withheld it, that that probably
2   would be sufficient to question the warrant itself.
3           MR. PENCE:  That very well may be the case here,
4   Your Honor, but that's not the facts that --
5           THE COURT:  I just want to make sure that I'm focusing
6   on what -- I mean, if it were true that the officer knew or
7   should have known that this summons was improper, that should
8   have been divulged to the judge.
9           MR. PENCE:  Your Honor, I understand that argument.
10  I'm not sure that's exactly the argument that the defense is --
11          THE COURT:  Well, I don't know if it is or not, but if
12  those were the facts, you would agree that the warrant can be
13  questioned?
14          MR. PENCE:  Yes, Your Honor.
15          THE COURT:  Okay.  But what you're saying is, first of
16  all, that the summons was proper, and number two, even if it
17  was improper, there's no way he would have known that it was
18  improper or should have known that it was improper.
19          MR. PENCE:  That's correct, Your Honor.
20          THE COURT:  Okay.
21      Counsel.
22          MS. ROSSI:  Yes, Your Honor.
23      The Court was correct in the defense position in how the
24  Court framed it, and essentially, that is the problem with the
25  government's argument, that it doesn't focus on that specific

1  issue.

2      First, I would just note that under Section 1509 -- and
3  for the record, it's, I believe, 19 United States Code, Section
4  1509.  Under that section, the government is ignoring the
5  totality of the section in pointing to specific provisions, but
6  the section and the section before it, 1508, are clear that
7  this section is designed for regulation of importers in the
8  United States and the records that they're required to keep as
9  part of that business.

10     This section, it's clear, was created to allow the
11 United States Customs Service to have a mechanism to
12 essentially audit those importers, to have a way to make sure
13 that they are keeping those records, to summon those records to
14 make sure that they are complying.  And if the Court looks at
15 the rest of the provisions in Section 1509 and 1508, there are
16 provisions for penalties for violations if people do not comply
17 with the summons.  And the division of the statute itself, it
18 shows that there is a difference between a record keeper,
19 someone who, on behalf of the importer, maintains those
20 records, versus the importer themself, and the statute
21 specifies those differences.

22     Here, that is simply inapplicable to the situation at
23 hand.  There's no indication at all, the government hasn't even
24 suggested, that Mr. Harper was allegedly an importer or that
25 Time Warner Cable was an importer.  There's no representation

1  made at all about that.

2  I think that the Court has to look at the totality of
3  Section 1509 and its purpose and make a determination based off
4  of that, not based off of one line in the statute that states
5  for compliance with the laws of the United States or for
6  insuring compliance with the laws administered by the
7  United States.

8  And then the second point I would make, Your Honor, is
9  that the government did provide declarations of its agents, and
10 notably silent is any fact whatsoever concerning the agents'
11 state of mind, whether they knew that this Section 1509 was
12 illegal, whether they knew that that was what the summons was
13 issued pursuant to, and why they left it out.  And I believe
14 that that burden is on the government.

15 I think that the Court can infer recklessness, because it
16 is undisputed that the summons was pursuant to Section 1509 and
17 because there is no facts before the Court whatsoever to
18 indicate that the agents in good faith relied on their belief
19 that Section 1509 was proper.  I believe that the Court can at
20 least infer recklessness here.  And for that reason,
21 Your Honor, I think that focusing specifically on the issue of
22 recklessness and the omission to the warrant which was
23 submitted to the magistrate judge, the Court should grant the
24 motion.

25          THE COURT:  Counsel -- it was raised on the AUSA's

```
 1   argument.  Does anyone know of any case where it says
 2   specifically that this law, that 1509 does not apply to a
 3   situation like this?  Is there any case that said -- I
 4   understand you're saying that reading the statute itself, but
 5   has any court addressed it one way or the other?
 6              MS. ROSSI:  I believe the government has cited some
 7   noncontrolling cases that, almost in passing, discuss Section
 8   1509 in this situation and have stated that it was okay in that
 9   situation.  But as detailed in my reply, those sections are
10   also dealing with different procedural aspects and --
11              THE COURT:  I understand that.  That goes towards
12   whether or not the government is showing that it's okay.  I'm
13   saying is there any cases that say it's not okay?
14              MS. ROSSI:  I haven't found any, Your Honor.
15              THE COURT:  Okay.
16         Anything further?
17              MR. PENCE:  Your Honor, I'd just like to make a few
18   points in closing.
19         The first is that, as has been disclosed here today, the
20   only case law that directly addresses this issue uniformly says
21   that the issuances of the summons in these circumstances is
22   proper.  Second, there's no suggestion that the defendant -- or
23   the subscribing agent was hiding the ball.  In the warrant, in
24   the affidavit in support of the warrant, the agent expressly
25   disclosed that the information was obtained pursuant to a
```

1  summons. He simply didn't cite that the summons was pursuant
2  to Section 1509. So there's no inference of recklessness or
3  intention that can be taken from that statement.
4      And I'd also like to just briefly touch on what I believe
5  is the defense counsel's misinterpretation of Section 1509.
6      There is no requirement that the Court look to Section
7  1508. The reason why defense counsel has interpolated Section
8  1508 into 1509, because the definition of records, under
9  (d)(2)(A), provides alternative definition of records. One, it
10 can be a record that's required to be held under Section 1508,
11 or, alternatively, it can be a record of, as I previously
12 described, of where there's probable cause to suspect there's
13 been merchandise that's been illegally imported into the
14 United States. And it's this alternative definition of record,
15 not 1508, but that alternative definition of record, that
16 supports the issuances of summons pursuant to Section 1509. So
17 1508 is just a rat hole that the Court doesn't need to go down.
18     I think with that, Your Honor, unless the Court has any
19 further questions, the government would like to --
20         THE COURT: This motion was brought by the defense.
21 I'm going to give you the last word on it, Counsel, if you'd
22 like to.
23         MS. ROSSI: Thank you, Your Honor.
24     I would just clarify my last statement when the Court
25 asked whether there was any statutes that specifically held

1  that this section was appropriate in this situation.  I didn't
2  find a case of that nature, but I did find a Ninth Circuit case
3  from 1984 that specifically discusses this section and its
4  purpose, and that case is *United States v. Frowein*,
5  F-r-o-w-e-i-n, 727 F.2d 227, and it's a 1984 case, and in
6  that --
7           THE COURT:  That was in your moving papers?
8           MS. ROSSI:  Yes, Your Honor, it is.
9           THE COURT:  Okay.  I just want to make sure it's the
10 same case I'm thinking of.
11          MS. ROSSI:  Yes, Your Honor, it is.  And just to
12 clarify, while it isn't directly on point, it does discuss the
13 history of the statute.
14          THE COURT:  Okay.  Thank you.
15      Counsel, in this particular matter, couple of
16 observations.  One is, is that many of the arguments we're
17 talking about as far as the limitations on 1509 are more
18 appropriately made if the company refused to honor the
19 subpoena, and their argument as to why they don't have to honor
20 it or not is probably more appropriate there, but it would be
21 appropriate here if there is some showing that failure -- or
22 excuse me, that somebody knew or should have known that 1509
23 was improper and should have brought it to the magistrate's
24 attention.
25          The Court has two problems.  One is, is that it appears

1  that the weight of the evidence shows that 1509 would be
2  appropriate, but even if it didn't, there's no indication --
3  we've talked about it here -- that somebody should know or
4  either knew or should have known that it's inappropriate, the
5  use of 1509 was inappropriate for the summons, and that it was
6  kept from the magistrate.  Therefore, the motion would be
7  denied.
8       Okay.  We have the trial set for when?
9            MR. PENCE:  Next Tuesday, Your Honor.
10           THE COURT:  Next Tuesday?
11           MS. ROSSI:  Yes.
12           THE COURT:  Okay.  Anything else I can do for you?
13           MS. ROSSI:  Yes, Your Honor.  We would like to, if the
14  Court is amenable, change the plea on Counts 2 and 3.
15  Mr. Harper would like to plead guilty to Counts 2 and 3.
16           THE COURT:  You want to do that now?
17           MS. ROSSI:  Yes, we are prepared to do that now if the
18  Court --
19           THE COURT:  Any problems with that?
20           MR. PENCE:  None, Your Honor.
21           THE COURT:  Then I'm going to have you approach the
22  podium with your client, Counsel.  Give me just a second here.
23   *(Proceedings of motion to suppress concluded at 10:26 a.m.)*
24   *(Proceedings of change of plea under separate cover.)*
25                            *--oOo--*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*CERTIFICATE*

*I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  JULY 15, 2016*

*/S/ SANDRA MACNEIL*

*Sandra MacNeil, CSR No. 9013*