1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   GEORGE E. PENCE (Cal. Bar No. 257595)
4  A. CARLEY PALMER (Cal Bar. No. 307303)
   Assistant United States Attorneys
5  General Crimes Section
        1200 United States Courthouse
6        312 North Spring Street
        Los Angeles, California 90012
7        Telephone: (213) 894-2253/0282
        Facsimile: (213) 894-0141
8        E-mail:    george.pence@usdoj.gov
                   carley.palmer@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11                 UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,          No. CR 15-00595-RGK

14          Plaintiff,                OPPOSITION TO DEFENDANT'S MOTION
                                      *IN LIMINE* TO EXCLUDE GOVERNMENT
15               v.                   EXPERT TESTIMONY

16 ANGELO HARPER JR.,                 Trial Date:    July 19, 2016
                                      Trial Time:    9:00 a.m.
17          Defendant.                Location:      Courtroom of the
                                                     Hon. R. GARY
18                                                   KLAUSNER

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                  PAGE

TABLE OF AUTHORITIES........................................................ii

I.    INTRODUCTION...........................................................1

II.   BACKGROUND.............................................................2

      A.    In January 2014, Law Enforcement Uncovered Defendant's
            Possession of Hundreds of Child Pornography Images and
            Videos...........................................................2

      B.    In August 2015, Law Enforcement Uncovered Defendant's
            Possession, Distribution, and Advertisement of
            Hundreds Of Additional Child Pornography Images and
            Videos...........................................................2

      C.    The Indictment Charged Defendant's Child Pornography
            Crimes in 2014 and 2015..........................................3

      D.    More Than Two Weeks Before Trial, the Government
            Notified Defendant of Its Intent to Call David Jones
            as an Expert Witness.............................................4

      E.    Promptly After Defendant's Guilty Plea, the Government
            Filed a Motion in Limine Identifying the Images that
            It Planned to Admit and Publish at Trial.........................5

      F.    Defendant Filed the Instant Motion Only Hours After
            Requesting, For the First Time, That the Government
            Identify the Images and Videos That Would Be the
            Subject of Mr. Jones' Expert Testimony...........................5

      G.    The Government Promptly Provided the Requested
            Information......................................................6

III.  ARGUMENT...............................................................6

      A.    The Notice Complied with Rule 16(a)(1)(G)........................6

      B.    The Notice Requirement Does Not Apply to SA McCall's
            Expected Testimony..............................................10

IV.   CONCLUSION............................................................11

### TABLE OF AUTHORITIES

**CASES**

States v. Brown, 785 F.3d 1337 (9th Cir.2015).......................7

United States v. Cheek, 740 F.3d 440 (7th Cir.), cert. denied,
    134 S. Ct. 2152 (2014).........................................9

United States v. Freeman, 498 F.3d 893 (9th Cir. 2007).............9

United States v. Nacchio, 519 F.3d 1140 (10th Cir. 2008)...........7

United States v. Phillips, 146 F. Supp. 3d 837 (E.D. Mich. 2015)....7

United States v. Wright, 625 F.3d 583 (9th Cir. 2010)..............7

**RULES**

18 U.S.C. § 2251...................................................3

18 U.S.C. § 2252A..................................................3

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys George E. Pence and A. Carley Palmer, hereby files its Opposition to Defendant's Motion in Limine to Exclude Government Expert Testimony (the "Motion").

## I.   INTRODUCTION

Defendant's Motion seeks to exclude testimony from (1) the government's expert witness, David Jones, who will testify that certain videos and images found on defendant's electronic devices depict actual minors, and (2) Special Agent ("SA") Patrick McCall, who will testify about, among other things, his interpretation of defendant's advertisements in the #NEPILOVERS chatroom. Defendant argues that this testimony should be excluded because the government failed to provide expert notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). Defendant is mistaken for two reasons.

*First*, the government notified defendant of Mr. Jones' expected testimony on June 29, 2016, and that notice satisfied the requirements of Rule 16(a)(1)(G). Defendant's claim that the notice was deficient because it did not specify the handful of images and video that will be the subject matter of Mr. Jones' testimony seeks to impose upon the government a disclosure obligation that does not exist.

*Second*, Rule 16(a)(1)(G) simply does not apply to SA McCall's testimony because he will be testifying as a lay witness, not as an expert.

## II.   BACKGROUND

###   A.   In January 2014, Law Enforcement Uncovered Defendant's Possession of Hundreds of Child Pornography Images and Videos.

After investigating a tip from Dropbox – which provides online or "cloud" storage for computer files – that a Dropbox account contained child pornography, law enforcement executed a warrant at defendant's residence on January 14, 2014. Law enforcement seized a number of defendant's electronic devices and later found that those devices contained more than 300 images and two videos of child pornography. Law enforcement also found images and video of child pornography in defendant's Dropbox account.

###   B.   In August 2015, Law Enforcement Uncovered Defendant's Possession, Distribution, and Advertisement of Hundreds Of Additional Child Pornography Images and Videos.

On October 8, 2015, SA McCall used an iPad to connect to the Internet, log onto an undercover Kik Messenger account, and enter the #NEPILOVERS chatroom. Thereafter, SA McCall found, among other things, evidence that the chatroom user "CM8JIAW4" had advertised nine images and a video of child pornography in the chatroom between August 26, 2015, and October 11, 2015.

Among these advertisements, SA McCall found that on August 26, 2015, CM8JIAW4 posted an image that shows, underneath its infant subject, a piece of paper displaying the message "WAN2TR."[1] Later that same day, CM8JIAW4 also posted the comment: "I have tons of pics and vids of little boys and girls. Pm me for chat and trade of kids

---

[1] At the time this image was taken, the message "WAN2TR" possibly read in full "WAN2TRADE"; but the remaining letters in that message, if any, are obscured in the image.

under 6 [winking face emoji]."[2] Law enforcement later found that the CM8JIAW4 account belonged to defendant.

The government anticipates that SA McCall will testify at trial that, based on his investigation of the #NEPILOVERS chatroom, (1) the message "WAN2TR" was intended as an invitation to trade, and thus an advertisement for, child pornography, and (2) the term "Pm" is shorthand for "private message," which is a feature of the Kik Messaging application that allows users to exchange private messages that are not disclosed to other chatroom participants.

On October 13, 2015, law enforcement executed a search warrant at defendant's residence and seized several of his electronic devices, including an iPhone and an HTC Evo Shift smartphone. Those devices contained at least 2,380 images and 372 videos of child pornography.

## C. The Indictment Charged Defendant's Child Pornography Crimes in 2014 and 2015.

On October 28, 2015, the government filed an indictment against defendant. (Dkt. No. 11) Counts one and two of the indictment charged defendant with advertisement of child pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A), (e), and distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), respectively. Both of these counts arose from law enforcement's 2015 investigation of defendant. In addition, the indictment charged defendant in count three with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2). This count arose from law enforcement's 2014 investigation of defendant.

---

[2] An "emoji" is a small digital picture or pictorial symbol that represents a thing, feeling, or concept, used in text messages and other electronic communications.

**D. More Than Two Weeks Before Trial, the Government Notified Defendant of Its Intent to Call David Jones as an Expert Witness.**

On or before June 28, 2016, defendant's counsel informed the government that defendant would possibly "plea open" to counts two and three in the indictment, thus substantially affecting the nature of the evidence, including child pornography images, that the government would be required to present at trial. (<u>See</u> attached Declaration of George E. Pence ("Pence Decl.") ¶ 2.) Out of an abundance of caution, the government did not wait until defendant made his final decision to provide expert notice. Instead, on June 29, 2016, the government notified defendant of its intent to call Mr. Jones as an expert witness (the "Notice"). (Pence Decl. ¶ 2, Ex. A.) The Notice stated:

> David Jones is expected to testify in general about digitally-created and manipulated computer images, including composite images, morphed images, and computer generated images. More specifically, he is expected to testify that he has viewed select movie and image files showing child pornography found on defendant's digital devices and that, in his expert opinion, they depict actual persons and are not the result of compositing, morphing, or computer generation.

> Mr. Jones' opinion regarding digitally-created and manipulated computer images is based on his specialized training in such technology and his experience working in computer animated graphics. We are obtaining an updated *curriculum vitae* for Mr. Jones, which will contain his qualifications, and will provide that to you upon receipt. Mr. Jones charges $500/hour

4

for his services. He has not prepared any reports, but if he does so, we will forward them to you as well. (Id.) The government provided Mr. Jones' curriculum vitae to defendant on July 6, 2016. (Id. ¶ 3, Ex. B.)

### E. Promptly After Defendant's Guilty Plea, the Government Filed a Motion in Limine Identifying the Images that It Planned to Admit and Publish at Trial.

On July 12, 2016, defendant pleaded guilty to count two, distribution of child pornography, and count three, possession of child pornography, and filed a Waiver of Trial by Jury and Waiver of Special Findings of Fact, which the Court approved on July 13, 2016. The sole charge at issue in this trial, therefore, is count one, advertisement of child pornography.

On July 13, 2016, the government filed its Motion *in Limine* No. 1 to Admit, and Permit Publication of, Child Pornography Images. (Dkt. No. 47.) That motion identified the handful of child pornography images, clips of videos, and video stills that the government planned to offer at trial in light of defendant's guilty plea. (Id. at pp. 1–2.) The motion explained that defendant had advertised the images and video in the #NEPILOVERS chatroom, and that defendant had also possessed versions of those images and video on his electronic devices. (Id.)

### F. Defendant Filed the Instant Motion Only Hours After Requesting, For the First Time, That the Government Identify the Images and Videos That Would Be the Subject of Mr. Jones' Expert Testimony.

At 2:23 p.m. (PST) on July 14, 2016, Deputy Federal Public Defender ("DFPD") Rachel Rossi sent undersigned counsel for the government an email requesting that the government identify the "select movie and image files [Mr. Jones] has viewed and will testify

about." (Pence Decl. ¶ 5.) Less than eight hours after DFPD Rossi sent her email, defendant filed the instant Motion. (Id.)

**G.   The Government Promptly Provided the Requested Information.**

At 6:23 a.m. (PST) the following day, the government provided DFPD Rossi with the information she had requested. Specifically, the government informed DFPD Rossi:

> Please be advised that the government anticipates offering David Jones' expert opinion specifically concerning (1) three images found on defendant's iPhone, redacted versions of which I showed to you yesterday at my office, which images appear to be visually similar to the images defendant posted in the #NEPILOVERS chatroom, and (2) the video posted by defendant in the #NEPILOVERS chatroom on October 7, 2015, clips of which I also showed you yesterday at my office.

(Pence Decl. ¶ 6.)

**III. ARGUMENT**

**A.   The Notice Complied with Rule 16(a)(1)(G)**

Defendant argues that the Notice is deficient because (1) it does not identify the particular images and video that will be the subject matter of Mr. Jones's expert testimony and (2) the terms "compositing," "morphing" and "computer generated" in the Notice are undefined. Defendant's argument is makeweight.

Under Rule 16(a)(1)(G), the government must provide a "summary" of "the [expert] witness's opinions, the bases and reasons for these opinions, and witness qualifications." Rule 16 contains no deadline to make the required disclosure. Instead, the Advisory Committee Notes make clear that the requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce

the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. Proc. 16 (Advisory Committee Notes, 1993 Amendment).

Thus, the notice period need not be lengthy. E.g., United States v. Wright, 625 F.3d 583, 617 (9th Cir. 2010) ("Wright was given a total of eleven days (seven business days) prior to the start of trial to rebut the government's evidence. This was more than enough time."), superseded by statute on other grounds, as recognized by United States v. Brown, 785 F.3d 1337, 1351 (9th Cir. 2015).

Furthermore, the notice need not include "extensive discussion" of the bases of the witnesses' expected testimony. E.g., United States v. Nacchio, 519 F.3d 1140, 1151 (10th Cir. 2008) ("The district court's belief that Rule 16 also requires extensive discussion of a witness's methodology was incorrect, and its exclusion of the evidence an abuse of discretion."), vacated in part on other grounds on reh'g en banc, 555 F.3d 1234 (10th Cir. 2009). This is especially true in cases such as this one, where the expert's opinion is based on experience, training, and observation, not on scientific or laboratory analysis. E.g., United States v. Phillips, 146 F. Supp. 3d 837, 842 (E.D. Mich. 2015) ("Considering that the notice provided the witness's Curriculum Vitae, and also explained that the witness has examined hundreds of firearms and firearms components in his career, the Court finds that the Government has provided sufficient basis for his opinion." (internal quotation marks and citations omitted)).

Here, the government's Notice satisfied the requirements of Rule 16(a)(1)(G). The Notice made clear weeks ago the government's

intention to offer Mr. Jones' expert testimony that images found on defendant's electronic devices, which Mr. Jones had viewed, depicted "actual persons" and that this testimony would be based on Mr. Jones' experience working in computer animated graphics. Now that defendant has pleaded guilty to counts two and three in the indictment, the government need not prove at trial a visual depiction of an actual minor, because neither defendant's possession nor his distribution of such a visual depiction is an element of the offense of advertising child pornography. <u>See</u> Government's Trial Memorandum (Dkt. No. 48). Mr. Jones' testimony, however, is still relevant to the advertising charge. It confirms that defendant's August 26, 2016, advertisements offered to trade visual depictions of actual minors engaged in sexually explicit conduct and defeats any suggestion that the advertisements were actually intended to offer for trade computer-generated images of children.

The government's decision not to include the specific images and video upon which it would rely at trial in the Notice was not a tactic designed to frustrate defendant's preparation of his case. To the contrary, that omission reflected the realities of the case at the time the Notice was sent. Defendant's electronic devices seized during two separate investigations contained hundreds of child pornography images. Before the government sent the Notice, defendant's counsel had advised the government that defendant would possibly plea to counts two and three, but that a final decision had not been made. Thus, at the time the Notice was sent, there was uncertainty as to what evidence of actual images of minors, if any, the government would have to prove at trial, and there were hundreds of images that the government could potentially rely upon. This

1   uncertainty was not resolved until defendant pleaded guilty to counts

2   two and three in the indictment on July 12, 2016, promptly after

3   which the government advised defendant of the images that would be

4   the subject matter of Mr. Jones' testimony.

5        In any event, upon receiving the Notice, Defendant could have

6   retained and designated a rebuttal expert. That expert could have

7   examined all of defendant's electronic devices — which the government

8   made available to defendant for inspection before it sent the Notice

9   — and come to his or her own conclusions about whether the images

10  contained on those devices depicted actual minors.[3] Alternatively,

11  defendant could have retained and designated such an expert and had

12  that expert on call to examine any images and video that the

13  government ultimately designated for use at trial. If defendant had

14  concerns about the timing of that designation, he could have made

15  those concerns known to the government before July 14, 2016. He did

16  not. Instead, defendant waited until July 14, 2016, which was the

17  first time defendant raised any issue about Mr. Jones. Defendant's

18  lack of diligence does not justify the exclusion of Mr. Jones'

19  testimony.

20

21

---

22       [3] Defendant should not be heard to argue that the volume of that
    work would have been unreasonable for his expert to perform, because
23  defendant — not the government — is responsible for the hundreds of
    images and videos contained on his electronic devices. In any event,
24  no later than July 6, 2016, the government notified defendant of
    specific images and video that it viewed as relevant to the
25  advertising charge (i.e., the images and video defendant advertised
    in the #NEPILOVERS chatroom), and of the fact that those images and
26  video were found on defendant's iPhone and HTC Evo Shift mobile
    phone. (Pence Decl. ¶ 4.) Defendant might have retained an expert to
27  examine those images and video – which are the same images and video
    that are the subject matter of Mr. Jones' expected testimony – any
28  time after July 6, 2016. But he did not.

1   Defendant also claims that the Notice was deficient because the

2   terms "compositing," "morphing" and "computer generation" are

3   undefined. These are plain English words and can be understood with

4   reference to a common dictionary.[4]

5   **B.   The Notice Requirement Does Not Apply to SA McCall's Expected Testimony.**

6   It is well-established that a law enforcement officer may offer

7   lay testimony about his interpretation of ambiguous conversations

8   based on his direct knowledge of the investigation of those

9   conversations if those opinions would be helpful to the trier of

10  fact. United States v. Freeman, 498 F.3d 893, 904 (9th Cir. 2007)

11  (affirming district court's admission of such testimony); United

12  States v. Cheek, 740 F.3d 440, 447 (7th Cir.), cert. denied, 134 S.

13  Ct. 2152 (2014) ("When a law enforcement officer testifies about the

14  meaning of drug code words used by defendants based on personal

15  knowledge obtained from the investigation of those defendants, the

16  officer is testifying as a lay witness.").

17  Here, SA McCall will testify as a lay witness based on his

18  direct knowledge of the investigation of defendant's advertisements

19  in the #NEPILOVERS chatroom. Outside the context of the #NEPILOVERS

20  chatroom, the terms "Pm" and "WANT2TR" are ambiguous; they derive

21

22

23  [4] Compositing. Dictionary.com Unabridged. Random House, Inc.
    http://www.dictionary.com/browse/compositing (accessed: July 16,

24  2016) ("made up of disparate or separate parts or elements" and
    citing as an example a "composite drawing"); morphing. Dictionary.com

25  Unabridged. Random House, Inc.
    http://www.dictionary.com/browse/morphing (accessed: July 16, 2016)

26  ("the smooth transformation of one image into another by computer, as
    in a motion picture"); computer generated. Collins English

27  Dictionary.
    http://www.collinsdictionary.com/dictionary/english/computer-

28  generated (accessed: July 16, 2016) ("produced by a computer
    program").

their unambiguous meaning in this case by virtue of defendant's use of those terms in the chatroom. SA McCall's interpretation of those terms based on his direct investigation of defendant's crimes in that chatroom therefore constitutes admissible lay testimony. <u>Freeman</u>, 498 F.3d at 905. There is therefore no requirement that the government provide notice of that testimony under Rule 16(a)(1)(G). Consistent with this conclusion, the government expressly stated in its Trial Memorandum that expert notice was not required for SA McCall's testimony but that such notice was being provided out of an abundance of caution.

**IV.   CONCLUSION**

The government respectfully requests that the Court deny defendant's Motion.


Dated: July 17, 2016                    Respectfully submitted,

                                        EILEEN M. DECKER
                                        United States Attorney

                                        LAWRENCE S. MIDDLETON
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/
                                        _____
                                        GEORGE E. PENCE
                                        A. CARLEY PALMER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## DECLARATION OF GEORGE E. PENCE

I, GEORGE E. PENCE, declare as follows:

1.   I am an Assistant United States Attorney and trial counsel for the government in United States v Angelo Harper Jr., CR 15-00595-RGK. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.   On or before June 28, 2016, Deputy Federal Public Defender ("DFPD") Rachel Rossi informed me that defendant would possibly "plea open" to counts two and three in the indictment, thus substantially affecting the nature of the evidence, including child pornography images, that the government would be required to present at trial. Out of an abundance of caution, I did not wait until defendant made his final decision to provide expert notice. Instead, on June 29, 2016, I sent DFPD Rossi a letter (the "Notice") notifying her of the government's intent to call David Jones as an expert witness. A true and correct copy of that letter is attached hereto as Exhibit A.

3.   On July 6, 2016, I sent a copy of Mr. Jones' curriculum vitae to DFPD Rossi via email. A true and correct copy of that email is attached hereto as Exhibit B.

4.   On July 7, 2016, I sent an email to DFPD Rossi responding in writing to her request for clarification as to "whether evidence concerning counts 1 and 2 was located on the devices searched (sic) from the Moreno Valley residence in 2015." In pertinent part, that email to DFPD Rossi stated:

> As detailed in the reports of investigation that have been
> produced to defendant, evidence concerning counts 1 and 2 was

located on defendant's electronic devices, which were seized on October 13, 2015, from his Moreno Valley residence. Investigating agents found child pornography on defendant's iPhone, the 2GB memory card inside defendant's HTC EVO mobile phone, defendant's Dell XPS, and defendant's Dell Mini.  See HAJ000600-HAJ000607 (SA Ruiz's report of investigation concerning these electronic devices).

This electronic evidence, however, is not the only evidence supporting those counts.  Such evidence also includes, but is not limited to, defendant's statements in both 2014 and 2015 to investigating agents; child pornography seized from defendant's electronic devices and Dropbox account in 2015; business records obtained from Dropbox, Time Warner Cable, and Kik; screenshots evidencing defendant's advertising and distribution of child pornography in the #NEPILOVERS chatroom; and the testimony of agents and expert witnesses.

Moreover, the screenshots from SA McCall's iPad showing defendant's advertisement of child pornography on Kik show child pornography images labeled "Camera" and "Gallery" in their upper left hand corner. All of those images were found on defendant's iPhone, except the image posted to the group on August 26, 2015, which shows anal penetration of an infant with a sign in the background reading "WAN2TR." In addition, the screenshots also show defendant posted a video, entitled "2yo_boy_Toddler_Baby_Raamat_fucks_and_swallows.avi." Parts of that video were found on defendant's HTC Evo phone.

5.   At 2:23 p.m. (PST) on July 14, 2016, DFPD Rossi sent me an email requesting that the government identify the "select movie and

13

1  image files [Mr. Jones] has viewed and will testify about." Less than
2  eight hours after DFPD Rossi sent that email, defendant filed the
3  instant Motion. At no time before filing the motion did defendant or
4  his counsel request that I clarify the meaning of the words
5  "compositing," "morphing," or "computer generation" as they appear in
6  the Notice.

7      6.   At 6:23 a.m. (PST) on July 15, 2016, I provided written
8  notice to DFPD Rossi of the specific images and video that the
9  government anticipates will be the subject matter of Mr. Jones'
10 testimony. That notice stated:

11     Please be advised that the government anticipates offering David
12     Jones' expert opinion specifically concerning (1) three images
13     found on defendant's iPhone, redacted versions of which I showed
14     to you yesterday at my office, which images appear to be
15     visually similar to the images defendant posted in the
16     #NEPILOVERS chatroom, and (2) the video posted by defendant in
17     the #NEPILOVERS chatroom on October 7, 2015, clips of which I
18     also showed you yesterday at my office.

19 I declare under penalty of perjury under the laws of the United
20 States of America that the foregoing is true and correct and that
21 this declaration is executed at Los Angeles, California, on July 16,
22 2016.

23

24                                        GEORGE E. PENCE

25

26

27

28

                                  14

# EXHIBIT A



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*AUSAs George Pence / Carley Palmer*
*Phone:  (213) 894-2253/0282*
*E-mail:  george.pence@usdoj.gov*

*1200 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California  90012*

June 29, 2016

**VIA E-MAIL**

Rachel Alexandra Rossi
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012-4202
Email: Rachel_Rossi@fd.org

      Re:    <u>United States v. Harper</u>,
               CR No. 15-595-RGK

Dear Counsel:

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the government hereby discloses that it intends to use expert testimony of David Jones, Dennis Reneau, Christopher Landi, and Oladele Salaam under Federal Rules of Evidence 702, 703, or 705.

## I.    <u>David Jones</u>

David Jones is expected to testify in general about digitally-created and manipulated computer images, including composite images, morphed images, and computer generated images. More specifically, he is expected to testify that he has viewed select movie and image files showing child pornography found on defendant's digital devices and that, in his expert opinion, they depict actual persons and are not the result of compositing, morphing, or computer generation.

Mr. Jones' opinion regarding digitally-created and manipulated computer images is based on his specialized training in such technology and his experience working in computer animated graphics. We are obtaining an updated curriculum vitae for Mr. Jones, which will contain his qualifications, and will provide that to you upon receipt. Mr. Jones charges $500/hour for his services. He has not prepared any reports, but if he does so, we will forward them to you as well.

## II.    <u>CFA Dennis Reneau</u>

Computer Forensic Analyst ("CFA") Dennis Reneau is expected to testify regarding the forensic copies he made of digital devices—namely, a Lacie external hard disk drive, a Dell computer tower and Seagate HDD, and Apple iPhone—seized pursuant to the search warrant that was executed on January 16, 2014, at defendant's residence. Specifically, CFA Reneau is expected to testify about the content of those digital devices; the location of certain text, image, and video files on those devices; whether those files reside in allocated or unallocated space; and when and

Rossi
RE:  U.S. v. Harper, 15-595-RGK
June 29, 2016
Page 2

how those files were created or placed on the devices. The government anticipates that his
testimony would be primarily that of a percipient witness. Nevertheless, the government hereby
also provides expert notice of CFA Reneau's testimony in an abundance of caution. This
testimony will be based upon his specialized training and experience in the field of computer
forensics. CFA Reneau's testimony is expected to be consistent with his report previously
produced at HAJ000055–HAJ000072. His curriculum vitae is attached hereto.

## III.    SA Christopher Landi

SA Christopher Landi is expected to testify regarding the forensic copy he made of a Sprint HTC
PG06100 EVO Shift 4G phone seized pursuant to the search warrant that was executed
October 13, 2015, at defendant's residence. Specifically, SA Landi is expected to testify about
the content of that digital device; the location of certain text, image, and video files on that
device; whether those files reside in allocated or unallocated space; and when and how those
files were created or placed on the device. The government anticipates that his testimony will be
primarily that of a percipient witness. Nevertheless, the government hereby also provides expert
notice of SA Landi's testimony in an abundance of caution. This testimony would be based upon
his specialized training and experience in the field of computer forensics. His curriculum vitae is
attached hereto. He has not prepared any reports, but if he does so, we will forward them to you.

## IV.    CFA Oladele Salaam

CFA Oladele Salaam is expected to testify regarding the forensic copies he made of the
following digital devices seized pursuant to the search warrant that was executed on October 13,
2015, at defendant's residence: two 2GB Sandisk Cruzers, an 8GB PNY Attache, a 2GB Lexar
USB, a Spring HTC Hero200 phone, a 2GB Sandisk MicroSD in the HTC Hero200 phone, an
HTC PG06100 EVO Shift 4G phone, a 2GB SanDisk Micro SD in the HTC PG06100 EVO Shift
4G phone, a Dell XPS 210 laptop computer, a Dell Inspiron mini computer, a 500GB Seagate
LaCie Branded External Drive, a 32 GB Apple iPhone 4s, and a 16MB Canon SD card.

Specifically, CFA Salaam is expected to testify about the content of those digital devices; the
location of certain text, image, and video files on those devices; whether those files reside in
allocated or unallocated space; and when and how those files were created or placed on the
devices. The government anticipates that his testimony will be primarily that of a percipient
witness. Nevertheless, the government hereby also provides expert notice of CFA Salaam's
testimony in an abundance of caution. This testimony would be based upon his specialized
training and experience in the field of computer forensics. CFA Salaam's testimony is expected
to be consistent with his report previously produced at HAJ000559–HAJ000574 . His curriculum
vitae is attached hereto.

Rossi
RE:  U.S. v. Harper, 15-595-RGK
June 29, 2016
Page 3



Very truly yours,

        /s/

George E. Pence
Assistant United States Attorney
General Crimes Section


Enclosures

## EXHIBIT B

**From:**           Pence, George (USACAC)
**To:**               Rachel Rossi
**Cc:**               carley.palmer@usdoj.gov
**Subject:**     U.S. v. Harper
**Date:**          Wednesday, July 6, 2016 5:07:00 PM
**Attachments:**  David Jones CV.pdf
                     David Yeary CV.pdf

Dear Rachel,

On June 29, 2016, I provided you with written notice of the government's intention to call David Jones as an expert witness at trial in the above-referenced case, and on July 3, 2016, I provide you with written notice of the government's intention to call David Yeary as an expert witness at trial in the same case.  Please find attached CVs for both of these witnesses.

Best regards,

George

**George E. Pence | Assistant United States Attorney**
1200 United States Courthouse| 312 N. Spring St. | Los Angeles, California 90012
T: 213.894.2253 | F: 213.894.0141 | george.pence@usdoj.gov

# DAVID MARK VERRIER JONES

2923 Grayson Ave, Venice, CA, 90291 ● Phone: (310) 403–1494 ● E-Mail: damajo@mac.com ● rampagefx.com

## TV CREDITS:

Dragons: Race to the Edge
 (Director - 3 episodes)

- Have Dragon Will Travel, Part One  (2015) ... (as David M. V. Jones)
- A Time to Skrill  ... (as David M. V. Jones)
- Snow Way Out  ... (as David M. V. Jones)

Dragons: Race to the Edge
 (Visual Effects Supervisor - 66 episodes)

- Night of the Hunters, Part Two  (2016) ... (visual effects supervisor)
- Night of the Hunters, Part One  (2016) ... (visual effects supervisor)
- Team Astrid  (2016) ... (visual effects supervisor)
- Imperfect Harmony  (2015) ... (visual effects supervisor)
- Total Nightmare  (2015) ... (visual effects supervisor)
- The Next Big Sting  (2015) ... (visual effects supervisor)
- Have Dragon Will Travel, Part Two  (2015) ... (visual effects supervisor)
- Have Dragon Will Travel, Part One  (2015) ... (visual effects supervisor)
- Quake, Rattle and Roll  (2015) ... (visual effects supervisor)
- Crushing It  (2015) ... (visual effects supervisor)
- Reign of Fireworms  (2015) ... (visual effects supervisor)
- Dragon Eye of the Beholder, Part Two  (2015) ... (visual effects supervisor)
- Gone Gustav Gone  (2015) ... (visual effects supervisor)
- Big Man on Berk  (2015) ... (visual effects supervisor)
- When Darkness Falls  (2015) ... (visual effects supervisor)
- Dragon Eye of the Beholder, Part One  (2015) ... (visual effects supervisor)
- Maces and Talons, Part Two  ... (visual effects supervisor)
- Maces and Talons, Part One  ... (visual effects supervisor)
- A Time to Skrill  ... (visual effects supervisor)
- Snow Way Out  ... (visual effects supervisor)
- Shock and Awe  ... (visual effects supervisor)
- Edge of Disaster: Part Two  ... (visual effects supervisor)
- Edge of Disaster, Part One  ... (visual effects supervisor)
- The Zippleback Experience  ... (visual effects supervisor)
- Snotlout Gets the Axe  ... (visual effects supervisor)
- Bad Moon Rising  (2016) ... (visual effects supervisor)
- Cast Out: Part II  (2014) ... (visual effects supervisor)
- Cast Out, Part I  (2014) ... (visual effects supervisor)
- Bing! Bam! Boom!  (2014) ... (visual effects supervisor)
- Smoke Gets in Your Eyes  (2014) ... (visual effects supervisor)

- The Eel Effect  (2014) ... (visual effects supervisor)
- A Tale of Two Dragons  (2014) ... (visual effects supervisor)
- Frozen  (2014) ... (visual effects supervisor)
- Free Scauldy  (2014) ... (visual effects supervisor)
- The Flight Stuff  (2014) ... (visual effects supervisor)
- A View to a Skrill Part 2  (2013) ... (visual effects supervisor)
- A View to a Skrill: Part 1  (2013) ... (visual effects supervisor)
- Zippleback Down  (2013) ... (visual effects supervisor)
- Appetite for Destruction  (2013) ... (visual effects supervisor)
- Worst in Show  (2013) ... (visual effects supervisor)
- Fright of Passage  (2013) ... (visual effects supervisor)
- Race to Fireworm Island  (2013) ... (visual effects supervisor)
- Tunnel Vision  (2013) ... (visual effects supervisor)
- The Night and the Fury  (2013) ... (visual effects supervisor)
- The Iron Gronckle  (2013) ... (visual effects supervisor)
- Live and Let Fly  (2013) ... (visual effects supervisor)
- We Are Family: Part 2  (2013) ... (visual effects supervisor)
- We Are Family: Part 1  (2013) ... (visual effects supervisor)
- Gem of a Different Color  (2013) ... (visual effects supervisor)
- Breackneck Bog  (2013) ... (visual effects supervisor)
- Defiant One  (2013) ... (visual effects supervisor)
- Twinsanity  (2013) ... (visual effects supervisor)
- What Flies Beneath  (2013) ... (visual effects supervisor)
- When Lightning Strikes  (2012) ... (visual effects supervisor)
- Thawfest  (2012) ... (visual effects supervisor)
- Heather Report, Part II  (2012) ... (visual effects supervisor)
- Heather Report Part 1  (2012) ... (visual effects supervisor)
- Dragon Flower  (2012) ... (visual effects supervisor)
- Portrait of Hiccup as a Buff Man  (2012) ... (visual effects supervisor)
- How to Pick Your Dragon  (2012) ... (visual effects supervisor - as David M.V. Jones)
- Alvin and the Outcasts  (2012) ... (visual effects supervisor - as David M.V. Jones)
- In Dragons We Trust  (2012) ... (visual effects supervisor - as David M.V. Jones)
- The Terrible Twos  (2012) ... (visual effects supervisor - as David M.V. Jones)
- Animal House  (2012) ... (visual effects supervisor - as David M.V. Jones)
- How to Start a Dragon Academy  (2012) ... (visual effects supervisor - as David M.V. Jones)
- Viking for Hire  (2012) ... (visual effects supervisor - as David M.V. Jones)

## FILM CREDITS

- Alvin and the Chipmunks: Chipwrecked (visual effects supervisor: Rampage VFX)
- Project Five (TV Movie) (2011) (visual effects supervisor: Rampage VFX)
- The Change-Up (2011)  (visual effects supervisor: Rampage VFX/Dyfed - as David M.V. Jones)
- Charlie St. Cloud (2010) (visual effects supervisor: Rampage VFX)
- Blood Creek (2009) (visual effects supervisor: R!OT)

2

- The Time Traveler's Wife (2009) (visual effects supervisor - as David M.V. Jones)
- X-Men Origins: Wolverine (2009) (visual effects supervisor: R!OT)
- 17 Again (2009) (visual effects supervisor: R!OT)
- The Spirit (2008) (visual effects supervisor: R!OT)
- The Seeker: The Dark Is Rising (2008) (visual effects: R!OT - as David M.V. Jones)
- Hairspray (2007) (visual effects supervisor: Riot - as David M.V. Jones)
- Live Free or Die Hard (2007) (visual effects supervisor: R!OT)
- The Number 23 (2007) (visual effects consultant: Intelligent Creatures Inc.)
- Primeval (2007) (plate supervisor: Luma Pictures)
- The Phantom of the Opera (2004) (visual effects supervisor: Asylum - as David M.V. Jones)
- 13 Going on 30 (2004) (visual effects supervisor: Asylum)
- The Girl Next Door (2004) (visual effects supervisor: Asylum)
- Bad Boys II (2003) (visual effects supervisor: Asylum)
- Charlie's Angels: Full Throttle (2003) (visual effects supervisor: Asylum)
- Down with Love (2003) (visual effects supervisor: Asylum - as David M.V. Jones)
- Ticker (Short) (2002) (visual effects supervisor: Asylum - as David M.V. Jones)
- The Ring (2002) (visual effects supervisor: Asylum - as David M.V. Jones)
- The Master of Disguise (2002) (visual effects supervisor: Asylum - as David M.V. Jones)
- Joe Somebody (2001) visual effects supervisor: Asylum Effects - as David M.V. Jones)
- Black Hawk Down (2001) (visual effects supervisor: Asylum - as David M.V. Jones)
- Behind Enemy Lines (2001) (visual effects supervisor: Asylum - uncredited)
- Shallow Hal (2001) (visual effects supervisor: Asylum - uncredited)
- The Animal ((2001) visual effects supervisor: Manex Visual Effects)
- Hollow Man (2000) (senior CG supervisor: SPI)
- Paulie (1998) (digital effects supervisor: SPI)
- The Postman (1997) (CG supervisor: SPI)
- Contact (1997) (sequence supervisor: SPI)
- Escape from L.A. (1996) (CG supervisor: Buena Vista)
- The Phantom (1996) (computer generated art: Buena Vista Visual Effects)
- Ace Ventura: When Nature Calls  (1995) (3D artwork: Buena Vista Visual Effects)
  Mortal Kombat (1995) (CG supervisor: Buena Vista)

**BIO:**

However David started his career as a "Shader Writer" which is a very technical position that relies on a great understanding of how color and light reacts to surfaces, which is at the core of the understanding of VFX. It's with this immense understanding, great attention to detail, combined with a fantastical imagination that propelled David to the level of VFX supervisor.

David's vast experience both on and off set closely collaborating with directors to achieve unique and stunning visual effects for a wide variety of films, from huge block buster action movies such as "Charlie's Angels: Full Throttle" and, "Die Hard" to more artistic ventures like, "The Phantom of the Opera" and "Hairspray"

David's career has seen him work at most of the largest VFX companies in the world. Companies such as Disney, Boss Films, Manix, Sony Pictures Imageworks, Asylum, and Riot both working in house and on the studio side. Due to David's advanced leadership skills he has been able to supervise large shows (as many 800 plus shots) from conception through to final delivery.

3

4

David B. Yeary
Homeland Security Investigations
RAC Wilmington DE
1105 North Market Street, Suite 101
Wilmington, DE 19801
(302)363-2394
David.Yeary@ice.dhs.gov


**Employment History**

March 2003-Present, Special Agent
Department Of Homeland Security

December 2002- March 2003, Special Agent
Immigration and Naturalization Service

March 1993-December 2002, Detention Enforcement Officer
Immigration and Naturalization Service

April 1992- March 1993, Access Control/Computer Security
NASA

October 1991-March 1992, Border Patrol Agent,
U.S. Border Patrol


**Professional Training**

United States Border Patrol Academy October 1991
Federal Law Enforcement Training Center, Glynco, GA

Criminal Investigators Training Program, March 2003
Federal Law Enforcement Training Center, Glynco, GA

Strategic Investigations Course, February 2004
Federal Law Enforcement Training Center, Glynco, GA

Federal Air Marshals Training, June 2004
Atlantic City, New Jersey

Basic Computer Evidence Recovery Training (BCERT) July 2009
Federal Law Enforcement Training Center, Glynco, GA

Basic Cellphone Examinations (Cellebrite) September 2009
Homeland Security Investigations (HSI) Cyber Crimes Center (C3)

HSI C3 Computer Forensics Training Conference, August 2010
Phoenix, AZ

MAC Advance Forensic Acquisitions and Analysis, March 2011
Dover, DE

VIA Forensics Advance Cellphone Examinations, October 2011
Chicago, IL

Advance Cellphone Examinations (Cellebrite) June 2012
HSI C3

Advance Computer Evidence Recovery, Network Intrusions, March 2013
HSI C3

Net Clean Software Training, March 2014
HSI C3

NUIX Software and Certification Training, April 2015
NUIX Training Center

Encase 7 Training and Certification, May 2015
Dover, De

MAC Forensics and Acquisition Training and Certification Aug 2015

Human Trafficking Conference Ocean City MD, March 2016