EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GEORGE E. PENCE (Cal. Bar No. 257595)
A. CARLEY PALMER (Cal. Bar No. 307303)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2253/0282
     Facsimile: (213) 894-0141
     E-mail:    george.pence@usdoj.gov
                carley.palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 15-00595-RGK |
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT ANGELO HARPER JR.</u> |
| v. | |
| ANGELO HARPER JR., | Hearing Date: 1:30 p.m. |
| Defendant. | Hearing Time: October 12, 2016 |
| | Location:    Courtroom of the Hon. R. GARY KLAUSNER |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys George E. Pence and A. Carley Palmer, hereby files its Sentencing Position Regarding Defendant Angelo Harper Jr.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 3, 2016          Respectfully submitted,

                                EILEEN M. DECKER
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____
                                GEORGE E. PENCE
                                A. CARLEY PALMER
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On October 28, 2015, the grand jury returned an indictment against defendant Angelo Harper Jr. ("defendant"), charging him with three counts: Count One, advertisement of child pornography (18 U.S.C. §§ 2251(d)(1)(A), (e)); Count Two, distribution of child pornography (18 U.S.C. §§ 2252A(a)(2)(A), (b)(1)); and Count Three, possession of child pornography (18 U.S.C. §§ 2252A(a)(5)(B), (b)(2)). (Dkt. 11.) On July 12, 2016, defendant pleaded guilty to Counts Two and Three. (Dkt. 42.) On July 20, 2016, after a bench trial, the Court found defendant guilty of Count One. (Dkt. 64.) On October 17, 2016, defendant will be sentenced for his crimes.

These crimes are indisputably serious. Defendant possessed 8,260 images and 520 videos of child pornography. This collection included violent depictions of the rape and assault of babies and toddlers. Defendant also advertised and shared that collection online. In so doing, defendant created a market for child pornography and caused far-reaching harm to society's most vulnerable victims. As noted in the United States Probation Office's ("USPO") Presentence Investigation Report ("PSR"), defendant's victims, in their letters to the Court, describe a two-fold trauma: (1) "the nightmare of having been sexually abused as a minor," and (2) "the emotional impact of having learned that subsequent individuals are viewing the images." (PSR ¶ 23.)

Equally important, defendant has admitted that he cannot control his predatory impulses. (PSR ¶¶ 9, 15.) Even with the knowledge that law enforcement was investigating him and in January 2014 had found him in possession of child pornography, defendant continued his

conduct, which worsened. The escalating nature of defendant's conduct justifies the imposition of a significant term of imprisonment.

Accordingly, the government recommends that the Court impose a sentence of 235 months' imprisonment, a lifetime period of supervised release, and a mandatory special assessment of $300. That sentence falls within the applicable Guidelines range and is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).[1]

**II.  BACKGROUND**

  **A.  Defendant's Offense Conduct**

  1.  The Dropbox Investigation

In September 2013, law enforcement received a referral from the National Center for Missing and Exploited Children ("NCMEC"). NCMEC had evidence that an individual, later determined to be defendant, had accessed an account on Dropbox, an internet storage service, and uploaded images of child pornography. (PSR ¶ 7.) Law enforcement viewed the contents of the Dropbox account and confirmed that the images and videos indeed depicted child pornography. (Id. ¶ 8.)

On January 16, 2014, agents of Homeland Security Investigations ("HSI") executed a search warrant at defendant's home after determining the physical address associated with the IP address that had been used to access the Dropbox account.[2] (PSR ¶ 9.) During a recorded interview with one of those agents, defendant admitted using KIK Messenger, an online mobile messaging application, to receive

---

[1] The USPO has not filed a recommendation of a particular sentence in this case.

[2] An "IP address" is like a street address for computers – it is a code that identifies a computer network or a particular computer or other device on a network, consisting of four numbers separated by periods.

2

hyperlinks connecting to child pornography contained on Dropbox.com. (Id.) He admitted viewing and sharing child pornography through KIK Messenger on his mobile smartphone. (Id.) He also told law enforcement that he doubted he would ever lose interest in child pornography. (Id.)

HSI's forensic investigation of defendant's computer, which was seized on January 16, 2014, uncovered two child pornography videos and 330 child pornography images. (PSR ¶ 10.) HSI's forensic examination of defendant's iPhone uncovered fifty child pornography images. (Id. ¶ 11.) And HSI's search of defendant's Dropbox account uncovered approximately 2,800 images and 100 video files of child pornography, which primarily consisted of images of boys between the ages of 10 to 14 displaying nudity, exposed genitals, and masturbation. (Id. ¶ 12.)

### 2. The KIK Messenger Chatroom Investigation

In October 2015, HSI learned that defendant – under the fake names "CM8JIAW4" and "Bobby Green" – was advertising and distributing child pornography. (PSR ¶¶ 13-21.) Specifically, defendant posted such advertisements as "I have tons of pics and vids of little boys and girls. Pm[3] me for chat and trade of kids under 6 [winking face emoji]." (PSR ¶ 21.)

On October 13, 2016, HSI agents again executed a federal search warrant at defendant's home, and seized several of defendant's digital devices, including computers and phones. (PSR ¶ 15.) Again, an HSI agent interviewed defendant. (Id.) During the recorded

---

[3] The term "PM" is an idiomatic expression meaning "private message." The Kik application allows users to exchange private messages that are not disclosed to other participants in the chatroom.

3

interview, defendant admitted that he had distributed child pornography on KIK Messenger. (Id.) Defendant told law enforcement that he could not stop himself from viewing child pornography and that, while his interests varied, his recent interest had been toddlers. (Id.)

Law enforcement found approximately 3,800 child pornography images and 20 child pornography videos on defendant's iPhone. (PSR ¶ 20.) Forensic analysis of a memory card inside defendant's other mobile phone uncovered approximately 30 images, and more than 250 videos, all depicting the sexual exploitation of children. (PSR ¶ 16.) The majority of these images and videos depicted young boys under the age of 12. (Id.) Some depicted violent and sadistic abuse. (Id.; see also id. ¶ 17.) Law enforcement also uncovered evidence that defendant had actively used his mobile phones to trade child pornography with, and correspond with, other individuals with sexual interest in young children. (Id. ¶ 20.)

Forensic analysis of defendant's computers revealed, on one computer, approximately 550 child pornography images and 148 child pornography videos, and on the other, approximately 1,300 child pornography images. (Id. ¶ 18.)

**B.  Presentence Report**

On September 12, 2016, the USPO issued its PSR in this case. (Dkt. 66.) The PSR calculated defendant's base offense level, pursuant to USSG § 2G2.2(a)(2), as 22. (Id. ¶ 30.) The PSR also found that defendant's conduct warranted the following adjustments:

| Prepubescent Minors | +2 | USSG § 2G2.2(b)(2) |

4

| | | |
|---|---|---|
| Expectation of receipt of a thing of Value | +5 | USSG § 2G2.2(b)(3)(B)[4] |
| Sadistic conduct | +4 | USSG § 2G2.2(b)(4) |
| Use of a computer | +2 | USSG § 2G2.2(b)(6) |
| More than 600 images | +5 | USSG § 2G2.2(b)(7)(D) |
| Acceptance of responsibility | -2 | USSG § 3E1.1(a) |

(Id. ¶¶ 30-47.) The PSR thus calculated a total offense level of 38. (Id. ¶ 47.)  The USPO determined that defendant had 0 criminal history points, for a criminal history category of I. (Id. ¶ 52.) Given his total offense level of 38, and his criminal history category of I, the USPO determined that defendant's Guidelines range is 235 to 293 months' imprisonment; 5 years to life of supervised release, and a fine of $25,000 to $250,000. (Id. ¶¶ 75, 79, 84.)

The PSR noted that: Count One carries a statutory minimum sentence of 15 years' imprisonment and a statutory maximum sentence of 30 years' imprisonment; Count Two carries a statutory minimum sentence of 5 years' imprisonment and a statutory maximum sentence of 20 years' imprisonment; and Count Three carries no mandatory minimum sentence and a statutory maximum sentence of 20 years' imprisonment. (PSR ¶ 74.)

**III. THE GOVERNMENT'S SENTENCING POSITION**

The government requests that the Court adopt the factual findings and criminal history calculation of the PSR in this matter. The government recommends a sentence of 235 months' imprisonment, a lifetime period of supervised release, and a $300 special assessment.

---

[4] The PSR mistakenly cites USSG ¶ 2G2.2(b)(2) as the basis for this adjustment. (PSR ¶ 32.)

5

For the reasons outlined below, the government believes that this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

The Supreme Court has long recognized that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children." New York v. Ferber, 458 U.S. 747, 759 (1982). Therefore, the prevention of sexual exploitation and abuse of children is an "objective of surpassing importance." Id. at 756. Further, "[t]he legislative judgment as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." 458 U.S. at 758. This harm is caused not only by the abusive acts perpetrated during the production of child pornography, but also the enduring record of the child's sexual abuse:

> [T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in the years to come.

Osborne v. Ohio, 495 U.S. 103, 111 (1990) (citations omitted). A sexually abused child who has been photographed or videotaped must go through life knowing that these images are circulating within the mass distribution system for child pornography. Ferber, 458 U.S. at 758 n.9 & 760 n.10 (discussing harms to children caused by child pornography, including violation of their privacy interests).

The Ninth Circuit has also recognized that the victims of child pornography are the sexually exploited children depicted in the images:

> After all it was the children depicted -- and not society at large -- who were acted on and adversely affected, who oftentimes were forced to participate in the production of the pornography in which [defendant] traded, who were injured (both physically and psychologically) as a result of [defendant]'s patronage of the porn industry, who were sacrificed to satisfy [defendant]'s curiosities, who were subjected to the cruelest form of oppression, hardship, and mistreatment at the hands of pornography producers and photographers, and whose lives were quite possibly destroyed in the process.

United States v. Boos, 127 F.3d 1207, 1210 (9th Cir. 1997).

In United States v. Miller, 665 F.2d 114, 121 (5th Cir. 2011), the Fifth Circuit affirmed a 220-month sentence imposed on a defendant who, like defendant here, used the Internet to collect, share, and trade child pornography with like-minded individuals. Addressing the complaint that a defendant can sometimes face a higher sentence for non-contact child pornography offenses than for contact molestation offenses, the sentencing court eloquently stated:

> I will address one factor that I think should not be lost here, but that often gets lost — gets lost when we get into scholarly discussions or reviewing scholarly reports on the Guidelines, and that is the argument that this defendant would not have as high of a Guideline range if he had had a physical encounter with an underage person. The difference between that in this court's opinion and what is presented in a case like this is that we have numerous victims in a case like this, not one victim. Every image of a child, every image of a nonadult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of people — children who are forced into these roles.

Id.

7

Affirming the sentencing court, the Fifth Circuit discussed the connection between the market for child pornography, and the molestation of children:

> [It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for "fresh" faces and images."

Id. at 123.

Here, the fact that defendant engaged with a community of child pornography enthusiasts through a private message board dedicated to the trading of child pornography is an aggravating factor that supports a serious sentence. Defendant did not merely collect child pornography. He promoted it to, and shared it with, others. In so doing, he normalized the sexual exploitation of children and further victimized the children whose images he shared.

**B. History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**

Although defendant is 21 years' old and relatively young, his youth militates in favor of a lengthy sentence, in order to protect society from his escalating criminal conduct. Law enforcement's execution of a search warrant at defendant's home in January 2014 should have served as a wake-up call to defendant. (PSR ¶ 9.) It did not. Indeed, defendant's obsession with child pornography deepened, and he made his fantasies into reality by, on his own admission,

8

sexually assaulting his niece when she was between the ages of six months and two years, and photographing that abuse. (Id. ¶ 54.) Defendant cannot control his criminal desires. (Id. ¶¶ 9, 15.)

### C. Need for Deterrence and Public Protection (18 U.S.C. § 3553(a)(2))

The recommended sentence will appropriately promote respect for the law, protect the community, and deter defendant and others who would seek to emulate his conduct. Notably, defendant's prior experience with law enforcement failed to impress upon him the gravity of his crimes and failed to deter him from engaging in his most recent crimes. In light of these considerations, the recommended sentence is appropriate for this defendant. By requiring defendant to spend 235 months in custody and a lifetime on supervised release, the Court will give defendant time to consider his dangerous actions in light of their consequences — to both himself and others — and hopefully deter further offenses. Moreover, lifetime supervision would afford "the most effective manner" for providing defendant correctional treatment, and thus would serve to protect the public. 18 U.S.C. § 3553(a)(2)(D). While "imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 3582(a), the opposite is true of supervised release. See Tapia v. United States, 131 S. Ct. 2382, 2390 (2011); see also United States v. Daniels, 541 F.3d 915, 924 (9th Cir. 2008) (affirming imposition of lifetime term of supervised release in child pornography case).

### D. Need to Avoid Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))

Although child pornography sentences vary as widely as any sentences imposed by federal courts, the only sensible way to avoid unwarranted sentencing disparities across the district and the nation

9

is to use the Sentencing Guidelines as a starting point and vary from the ranges set forth therein only if a variance is warranted by the facts of a particular case. See Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the [g]uidelines ranges."). As the PSR correctly states, there is no basis for such a variance here. (PSR ¶ 87.) Thus, going lower than the sentence recommended by the government, and thus going beneath the Guidelines range, would create significant disparities between defendant and other similarly situated defendants.

**IV.   CONCLUSION**

For the foregoing reasons, the government's recommendation of 235 months' imprisonment is sufficient, but not greater than necessary, given the nature and circumstances of the offense and defendant's history and characteristics. The recommended sentence also reflects the need to punish defendant, promote respect for the law, deter future crimes, and avoid unwarranted sentencing disparities. See generally 18 U.S.C. § 3553(a). Accordingly, the government respectfully requests that the Court sentence defendant to 235 months' imprisonment, a lifetime period of supervised release, and a mandatory special assessment of $300.