1 | HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
2 | RACHEL A. ROSSI (Bar No. 266732)
Deputy Federal Public Defender
3 | (E-Mail: Rachel_Rossi@fd.org)
Deputy Federal Public Defender
4 | 321 East 2nd Street
Los Angeles, California 90012-4202
5 | Telephone: (213) 894-2854
Facsimile: (213) 894-0081
6 |
Attorneys for Defendant
7 | ANGELO HARPER, JR.

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12 |

| | |
|---|---|
| 13   UNITED STATES OF AMERICA, | Case No. 15-CR-595-RGK |
| 14         Plaintiff, | **MR. HARPER'S OBJECTIONS TO THE PRESENTENCE REPORT AND POSITION REGARDING SENTENCING; EXHIBITS A-H** |
| 15       v. | |
| 16   ANGELO HARPER, JR , | **Sentencing Date: October 17, 2016** |
| 17       Defendant. | **Sentencing Time: 1:30 p,m.** |

18 |

19 |     Defendant Angelo Harper, Jr., by and through his attorney of record, Deputy

20 | Federal Public Defender Rachel A. Rossi, hereby submits his Objections to the

21 | Presentence Report and Position Regarding Sentencing.

22 |

23 |                               Respectfully submitted,

24 |                               HILARY POTASHNER
Federal Public Defender

25 |

26 | DATED: October 11, 2016        By: /s/ Rachel A. Rossi

27 |                               RACHEL A. ROSSI
Deputy Federal Public Defender

28 |                               Attorney for ANGELO HARPER, JR.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Mr. Harper's conduct of possessing, distributing and advertising child pornography appears to have resulted from a history of sexual abuse.  Mr. Harper recently turned twenty-one - while this case was pending.  He has no criminal history and a strong support system consisting of family, friends and the community.  Thus, the appropriate sentence should be the mandatory minimum provided by law, or 180 months.

First, the enhancement for possession of 600 or more images does not apply, establishing the proper guideline range of 135-168 months.  Second, even should the Court apply this five-level enhancement, the resultant guideline range of 235 to 293 months should be given little weight here.  This is because the child pornography guidelines do not represent a reasoned judgment based on empirical evidence and national experience.  Finally, Mr. Harper's history and characteristics reveal a sentence of 180 months is sufficient but not greater than necessary to effectuate the goals of sentencing.

## II.

## POSITION REGARDING SENTENCING

A.   **Objections to the Presentence Report**

    *1.   The Upward Adjustment Under U.S.S.G. §2G2.2(b)(7)(D) for Possession of 600 Or More Images Should Not Apply Because Only 32 Images Were Possessed*

The PSR calculates an offense level of 38 (after acceptance of responsibility) and a Criminal History Category of I, for a guideline range of 235 to 293 months.  *See* PSR at p. 4, Dkt. # 66.  The PSR includes a sentencing upward adjustment of five levels under §2G2.2(b)(7)(D) for possession of 600 or more images, based on information provided by the government.  *See id*. at ¶ 39.  It is unclear what information may have

1   been provided to the probation office by the government, and the government attaches

2   no documents, reports or discovery to its position regarding sentencing which would

3   substantiate its' claims that over 600 images were possessed.  *See* Gov. Sent. Pos., Dkt.

4   # 67.  Thus, the government has not proven by clear and convincing evidence that more

5   than 32 images were possessed, and accordingly, this upward adjustment should not be

6   added.  As such, the proper base offense level should be 33, resulting in a guideline

7   range of 135-168 months.

8        When a sentencing factor "has an extremely disproportionate effect on the

9   sentence relative to the offense of conviction ... the government must prove such a

10   sentencing factor by "clear and convincing" evidence.  *See U.S. v. Mezas de Jesus*, 217

11   F.3d 638 (9th Cir. 2000) (citing *United States v. Hopper*, 177 F.3d 824, 833 (9th

12   Cir.1999) (holding a sentencing factor which increased the defendant's guideline range

13   by 36 to 44 months had to be proven by clear and convincing evidence).  Here, the five-

14   level adjustment would increase Mr. Harper's guideline range by 100 to 125 months.

15   Accordingly, the government has the burden to establish the applicability of this

16   enhancement by clear and convincing evidence.

17        In order to "possess" child pornography, the government must prove that the

18   defendant exercised "dominion and control" over the contraband.  *See United States v.*

19   *Flyer*, 633 F. 3d 911, 918 (9th Cir. 2011).  "Unallocated space' is space on a hard drive

20   that contains deleted data that "cannot be seen or accessed by the user without the use

21   of forensic software."  *See id*.  Thus, when a defendant "lacks access to or control over

22   [] files, it is not proper to charge him with possession and control of the child

23   pornography images located in those files, without some other indication of domination

24   and control over the images."  *See id*.  Deletion of an image is not sufficient evidence to

25   prove a defendant knowingly possessed that image on or about a certain date.  *See id*.

26   Accordingly, Mr. Harper can only be held accountable for images found in allocated

27   space--that is, images that had ***not*** been deleted.  Indeed, a defendant must "knowingly

28   possess" all images in order for them to qualify as relevant conduct and to invoke the

2

1    five level increase for possession of 600 or more images.  S*ee United States v.*

2    *Kuchinski*, 469 F. 3d 853 (9th Cir. 2006) (holding it improper to consider for guideline

3    purposes, the images located in cache files, which the defendant could not have

4    accessed control over).

5         Mr. Harper's residence was searched in August 2013, when he was 18 years old.

6    An external hard drive, a desktop computer, and a cell phone were seized and searched

7    for contraband.  Initially, the government's computer forensic expert found that no

8    images on any media device were located in allocated space-- in other words, that all

9    images were in unallocated space.  *See* Report of Investigation No. 5, attached hereto as

10   **Exhibit A**.  It appears the devices were later further investigated, and thirty-two images

11   total were found in allocated space.  *See* Report of Investigation No. 6, attached hereto

12   as **Exhibit B**.  No images were found on the Lacie external hard drive, thirty-two

13   images were found in allocated space on the Dell desktop computer, and no images

14   were found in allocated space on an Apple iPhone.  *See id*.  This conduct formed the

15   basis for count three of the indictment, where Mr. Harper was charged with possession

16   of a child pornography image on January 16, 2014.  *See* Dkt. # 11.  Accordingly, in

17   2014, only thirty-two images were possessed in allocated space.

18        Mr. Harper's residence was again searched on October 13, 2015, as a result of an

19   undercover agent witnessing his posting of images and statements in a Kik chatroom.

20   Those posts formed the basis for counts one and two.  *See* Indictment, Dkt. # 11.  Mr.

21   Harper was never charged with the possession of any images located during the second

22   search.  The government has provided general reports which describe forensic

23   evaluations conducted, but has not provided any discovery that sets forth which images

24   found in 2015 were located on allocated space, rather than unallocated space.

25         The government never charged Mr. Harper with possession of 600 or more

26   images of child pornography.  *See* Indictment, Dkt. # 11.  It has not proven possession

27   of more than the thirty-two images which relate to count three.  Neither has the

28   government established sufficient clear and convincing evidence of such possession in

1   order for the Court to consider it as relevant conduct.  It has not even attempted to

2   describe in its filing which images were found on allocated space.  *See* Gov. Sent. Pos.,

3   Dkt. # 67.  Further, the government has provided no discovery to the defense to

4   establish the possession of 600 or more images in allocated space.  Accordingly, the

5   Court should not apply the five-level upward adjustment under §2G2.2(b)(7)(D).

6           **2.**       **The Advisory Guidelines for Child Pornography Are Less**

7                     **Persuasive Because They Do Not Represent a Reasoned Judgment**

8                     **Based on Empirical Evidence and National Experience**

9       However, should the Court choose to accept the advisory guideline range

10   proposed by the PSR, it should nonetheless be given little weight, because it does not

11   represent a reasoned judgment by the Sentencing Commission based on empirical

12   evidence and national experience.  Specifically, the issue of whether images are on

13   unallocated or allocated space will create a difference of 100-125 months in the

14   sentencing guideline range here.  This excessive leap of over ***eight years*** of

15   incarceration is not reasoned, and is thus inappropriate.

16       The advisory guideline in this case fails to reflect the factors that this Court is

17   required to consider under 18 U.S.C. § 3553(a) in imposing a sentence.  *See Rita v.*

18   *United States*, 551 U.S. 338, 350 (2007) (holding that a district court is permitted to

19   consider that "the Guidelines sentence itself fails to properly reflect § 3553(a)

20   considerations").  The problem is more than just a failure to reflect the appropriate

21   sentence in Mr. Harper's case.  There is a systemic problem with the current advisory

22   guideline for child pornography similar to the one recognized by the Supreme Court in

23   *Kimbrough v. United States*, 552 U.S. 85 (2007).

24       Case law—both in the Ninth Circuit and other circuits— uniformly reflect the

25   view that "the child pornography Guidelines were not developed in a manner

26   'exemplifying the Sentencing Commission's exercise of its characteristic institutional

27   role.'"  *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) (quoting

28   *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (brackets omitted)).  In other

1    words, a within-guidelines sentence fails to account for critical information that

2    Congress, pursuant to 18 U.S.C. § 3553(a), mandated the Court to consider for

3    purposes of determining the appropriate sentence in a case such as this.  This view has

4    been echoed by federal judges throughout the country, 70 percent of whom believe the

5    guidelines produce overly harsh sentences in possession of child pornography cases.

6    *See* U.S. Sentencing Commission, Results of Survey of United States District Judges

7    January 2010 Through March 2010 (June 2010).   In *Kimbrough*, the Supreme Court

8    acknowledged that not all guidelines are equal.  While some "exemplify the

9    Commission's exercise of its characteristic institutional role," others do not.

10   *Kimbrough*, 552 U.S. at 109.  The Supreme Court explained that, in most cases, the

11   advisory guidelines "reflect a rough approximation of sentences that might achieve §

12   3553(a)'s objectives" because they are based on the Sentencing Commission's "expert

13   evaluation of empirical data and national experience."  *Kimbrough*, 552 U.S. at 109

14   (internal quotation marks omitted).  By contrast, when the guidelines do not reflect the

15   expertise of the Commission, but rather are based on congressional directives, they are

16   less likely to suggest a sentence that satisfies the requirements of § 3553(a), "even in a

17   "mine-run" case."  *Id*. (emphasis added).

18          The Ninth Circuit has dissected the child pornography guideline, explaining that

19   "like the crack-cocaine Guidelines at issue in *Kimbrough*, the child pornography

20   guidelines were not developed in a manner 'exemplifying the Sentencing

21   Commission's exercise of its characteristic institutional role.'"  *Henderson*, 649 F.3d at

22   960 (quoting *Kimbrough*, 552 U.S. at 109 (brackets omitted)).  As a result, "district

23   judges must enjoy the same liberty to depart from them based on reasonable policy

24   disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*."

25   *Id*.

26          *Henderson* detailed the history of the child pornography guideline, wading

27   through the nine substantive revisions during the child pornography guideline's 23

28   year-old existence.  In 1991, over the Sentencing Commission's objection, Congress

1    directed the Commission to increase the penalties for child pornography offenses.  *Id*.

2    Congress "explicitly ordered the Commission," among other things, to increase the

3    base offense level for receiving, transporting, and trafficking to at least 15; to add a

4    five-level enhancement for patterns of activity involving the sexual abuse or

5    exploitation of a minor, to increase the base offense level for possession to at least 13

6    and to add enhancements for the number of items possessed.  *See id*. (citing Child Porn.

7    History Rep't at 23–24; General Government Appropriations Act § 632).  The

8    Commission responded to these Congressional directives by raising the base offense

9    level for receipt from 13 to 15, adding a five-level pattern of activity enhancement,

10   amending § 2G2.4 by limiting it to possession of child pornography and raising its base

11   offense level from 10 to 13, and adding a two-level enhancement for possession of

12   more than 10 items.  *Id*.

13        Congress directed another increase in 1995.  This time, Congress ordered that the

14   base offense levels for all child pornography crimes be increased by two levels and an

15   additional two-level enhancement be applied when the offense involved the use of a

16   computer.  *See id*.  Also pursuant to Congress' directive, the Commission prepared a

17   report and analysis of sex offenses against children.  Its analysis supported the use of a

18   computer enhancement as it applied to production offenses, "but otherwise criticized

19   the two-level computer enhancement because it failed to distinguish serious

20   commercial distributors from more run-of-the-mill users."  *Id*.  It also recommended

21   that Congress increase the statutory maximum penalties for production offenses and

22   offenders with prior convictions for sex abuse crimes.  *Id*.

23        After additional amendments passed in 2000 to account for those who distributed

24   child pornography, Congress took matters into its own hands.  In 2003, it bypassed the

25   Commission altogether, and as part of the Prosecutorial Remedies and Other Tools To

26   End the Exploitation of Children Today Act, Congress made direct amendments to the

27   guidelines, as it did with respect to the crack guideline at issue in *Kimbrough*.  *See id*. at

28   962-63.  It added a four-level enhancement for possession of images of sadistic and

6

masochistic conduct, and it further increased the enhancements for the number of images to between two and five levels. *See id*. at 962. Congress also increased the base offense level for possession to 18. *Id*. The result was the current version of the Guidelines.

Just as the Supreme Court recognized in *Kimbrough*, the effect of Congressionally-mandated revisions in the child pornography guideline "make[s] it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *Id*. (internal quotation marks omitted). In other words, the guideline is of little help in fashioning a reasonable sentence in this case, and it should be afforded little to no weight.

Indeed, the flawed nature of the child pornography guideline has been recognized throughout the circuits. In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), the Second Circuit reversed a within-guidelines sentence for a defendant who pled guilty to one count of distribution of child pornography, based on the court's view that the sentence was substantively unreasonable. The *Dorvee* court, like the *Henderson* court, detailed the history of the child pornography guidelines, concluding that "adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders, who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories. This result is fundamentally incompatible with § 3553(a)." *Dorvee*, 616 F.3d at 187.

*Dorvee* highlighted two examples to illustrate the dubious logic of basing a reasonable sentence on the child pornography guideline. First, it juxtaposed Dorvee with an individual who "intentionally seeks out and contacts a twelve year-old on the internet, convinces the child to meet and to cross state lines for the meeting, and then engages in repeated sex with the child." *Id*. at 187. That individual would qualify for a guideline range of 151 to 188 months, whereas Dorvee's guideline range was 240 months. *See id*. Second, the court compared an individual who possessed two

7

1    nonviolent videos of seventeen-year-olds engaging in consensual sexual conduct, with

2    a defendant convicted of aggravated assault with a firearm that resulted in bodily

3    injury.  The guideline range for the defendant convicted of the child pornography

4    offense would be 46 to 57 months—the same as that for the defendant who had been

5    convicted of aggravated assault with a firearm.  *See id.*  In light of such examples,

6    *Dorvee* "encouraged [district judges] to take seriously the broad discretion they possess

7    in fashioning sentences under § 2G2.2 – ones that can range from non-custodial

8    sentences to the statutory maximum – bearing in mind that they are dealing with an

9    eccentric Guideline of highly unusual provenance which, unless carefully applied, can

10   easily generate unreasonable results."  616 F.3d at 188.  *See also United States v.*

11   *Grober*, 624 F.3d 592, 608-09 (3d Cir. 2010) (recognizing district courts' ability to

12   vary from § 2G2.2 on policy grounds because it was not developed pursuant to the

13   Commission's characteristic institutional role); *United States v. Stone*, 575 F.3d 83, 90

14   (1st Cir. 2009) (same).

15         Judge Berzon, in her concurrence in *Henderson*, echoed the Second Circuit's

16   caution against rote application of this guideline.  "I write only to emphasize that unjust

17   and sometimes bizarre results will follow if § 2G2.2 is applied by district courts

18   without a special awareness of the Guideline's anomalous history, chronicled in the

19   court's opinion and elsewhere."  *Henderson*, 649 F.3d at 964-65 (Berzon, J.,

20   concurring).  After identifying a number of flaws with the guideline, Judge Berzon

21   concluded:  "But, like any Guideline, § 2G2.2 is merely advisory.  District judges who,

22   after having considered § 2G2.2, conclude that it constitutes bad advice should be

23   encouraged to reject it as such."  *Id.* (citation omitted).

24         Here, the guidelines will place Mr. Harper well above the statutory mandatory

25   minimum sentence of fifteen years.  This is despite Mr. Harper's lack of any criminal

26   history, and despite the young age at which the offense conduct occurred.  The Court

27   should give the guidelines little weight in this case and sentence Mr. Harper to the

28   statutory mandatory minimum amount of incarceration.

8

**B.      A Sentence of 180 Months, or the Mandatory Minimum of Fifteen Years, Accurately Reflects Mr. Harper's History and Characteristics and Effectuates the Goals of Sentencing**

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).  Here, Mr. Harper was eighteen years old when the investigation of these charges began.  He had no criminal history whatsoever.  *See* PSR at ¶ 51.  He lived in Moreno Valley with his parents, and has two sisters.  *Id*. at ¶ 57- 58.  Mr. Harper was attending the Art Institute of California, and graduated from Valley View High School. *Id*. at ¶ 66-67.  Mr. Harper began attending Harvest Bible University in custody.  *Id*. at ¶ 65.  Even at such a young age, Mr. Harper was always gainfully employed when school permitted.  *See id*. at ¶ 69-70.   Mr. Harper was on the Dean's List and President's list in school and on the honor roll.  *See* Letters from Linda and Angelo Harper Sr., attached hereto as **Exhibit C**.

While the government focuses greatly on pending state allegations against Mr. Harper, those allegations have not resulted in a conviction, and are only pending unproven conduct.  Indeed, the medical examination performed on the complaining witness did not conclude that the alleged sexual abuse actually occurred.  *See id*. at ¶ 36.

Further, Mr. Harper was diagnosed with ADHD as a child.  *Id*. at ¶ 63.  However, information from his sisters reveals Mr. Harper's acting out as a child may have been related to sexual abuse he may have suffered.  *See* Letters from Mariah and Whitney Harper, attached hereto as **Exhibit D** ("I really think he must have been molested…"; "when I was younger I was molested by my older cousin, causing significant trauma in my life…trauma like that almost changes your beliefs on ethics and thinking something that was once wrong is now natural and right…I fully believe he has gone through some type of trauma as well.").  Mr. Harper's father, a registered sex offender, notes that Mr. Harper "is not the dangerous offender they had in mind

9

1   when they required severe penalties in child pornography cases." *See* Ex. C.  Mr.

2   Harper's aunt and uncle, knowing the nature of his convictions, also fully support him

3   and write to him while he is in custody.  *See* Letters from Sandra and Michael Dale,

4   attached hereto as **Exhibit E**.  They describe his character, his hard-working nature,

5   and his care for his grandmother.  *See id*.  They express admiration for Mr. Harper's

6   full cooperation with the agents upon his arrest, his forthcoming admissions, and his

7   honesty.  *See id*.

8        Mr. Harper also has the support from his community.  His youth group leader

9   describes Mr. Harper's commitment to the helping others, through "projects involving

10  poverty, hunger, community action, being global citizens, international mission trips,

11  etc."  *See* Letter from Corey Clark, attached hereto as **Exhibit F**.  Mr. Harper was not

12  required to complete any of this community service, but "valued compassion and

13  equality."  Mr. Harper's youth group leader further, in honesty, describes the duality of

14  a man's character, and his belief in Mr. Harper's capability of rehabilitation.  *See id*.

15  Mr. Harper's youth group leader asks this Court to see Mr. Harper as the "full man he

16  is" and not just the "weakest and darkest portions."  *See id*.

17       Finally, Mr. Harper's family friend, a Lieutenant for the Riverside Police

18  Department, expresses through a letter his support and love for Mr. Harper.  *See*

19  Showalter Letter, attached hereto as **Exhibit G**.  Lt. Showalter's sentiments do not

20  come from the same place as a family member, but as someone who has experienced

21  and fought the trauma of criminal activity on victims.  *See id*.  Lt. Showalter describes

22  what he has seen in his 28 years as an officer, and how he has observed the differences

23  with offenders he believes cannot, and those who he thinks can, be rehabilitated.  *See*

24  *id*.  Lt. Showalter expresses his belief that Mr. Harper is a good candidate for "the most

25  reasonable sentence," as he is "honest," "moral," and not a "lost cause or hardened

26  criminal."  *See id*.

27       In sum, Mr. Harper, at a young age, has committed crimes which will change his

28  life forever.  He has committed crimes which are contrary to his character - someone

1   who was and still is an ordinary child himself.  *See* Photos, attached hereto as **Exhibit**

2   **H**.  The despair and trauma caused by these offenses cannot be minimized, but the

3   trauma and abuse which causes a moral person to commit these offenses cannot be

4   ignored either.  The Court is faced with the difficulty of imposing a sentence which

5   provides "just punishment for the offense," but must also consider the need for

6   rehabilitation which leads to deterrence.  Here, 180 months in custody will strip Mr.

7   Harper of a meaningful portion of his young life.  Such a sentence is sufficient but not

8   greater than necessary to effectuate the goals of sentencing, and to permit Mr. Harper

9   rehabilitation and treatment after incarceration.

## III.

## CONCLUSION

12          Accordingly, Mr. Harper respectfully requests this Court sentence him to 180

13   months, or fifteen years, of incarceration.

15                                       Respectfully submitted,

16                                       HILARY POTASHNER
                                         Federal Public Defender

18   DATED: October 11, 2016        By:  /s/ Rachel A. Rossi

19                                       RACHEL A. ROSSI
                                         Deputy Federal Public Defender

20

21

22

23

24

25

26

27

28

                                       11