```
 1                  UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3           HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,          )
                                        )
 6                       PLAINTIFF,     )
                                        )
 7            vs.                       ) No. CR 15-00595-RGK
                                        )
 8   ANGELO HARPER, JR.,                )
                                        )
 9   _____DEFENDANT. )

10            REPORTER'S TRANSCRIPT OF COURT TRIAL
                    DAY 2, PAGES 95 TO 120
11               WEDNESDAY, JULY 20, 2016
                    LOS ANGELES, CALIFORNIA
12                        9:08 A.M.

13   APPEARANCES:

14   FOR PLAINTIFF:      OFFICE OF THE UNITED STATES ATTORNEY
                         BY:  ANNE CARLEY PALMER
15                            GEORGE E. PENCE, IV
                              THOMAS STOUT
16                            ASSISTANT UNITED STATES ATTORNEYS
                         312 NO. SPRING STREET
17                       LOS ANGELES, CALIFORNIA  90012
                         213.894.0282
18
     FOR DEFENDANT:      FEDERAL PUBLIC DEFENDER'S OFFICE
19                       BY:  RACHEL A. ROSSI and JENNIFER UYEDA
                              DEPUTY FEDERAL PUBLIC DEFENDERS
20                       321 EAST 2ND STREET
                         LOS ANGELES, CALIFORNIA  90012
21                       213.894.4406

22   ALSO PRESENT:       JONATHAN RUIZ, SPECIAL AGENT, DHS

23   _____
             SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
24         Official Court Reporter, U.S. District Court
             255 East Temple Street, Room 181-F
25           Los Angeles, CA  90012; 213.894.5949
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                    I N D E X
 2


 3


 4   PROCEEDINGS:                              PAGE:

 5     Government's closing argument            102

 6     Defendant's closing argument            108

 7     Government's rebuttal argument           116

 8     Ruling of the Court                      118

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS:                              PAGE:

  Government's closing argument            102

  Defendant's closing argument            108

  Government's rebuttal argument           116

  Ruling of the Court                      118

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 20, 2016

 2                                  9:08 A.M.

 3                                  - - - -

 4

 5              THE COURT:  Okay.  Appearances.

 6              THE CLERK:  Calling calendar item No. 1, case

 7   No. Criminal 15-595-RGK, United States of America versus

 8   Angelo Harper, Jr.

 9         Counsel, please state your appearances.

10              MS. PALMER:  Good morning, Your Honor.  Carley Palmer

11   and George Pence for the United States, and with us at

12   counsel's table are AUSA Tom Stout and Special Agent Jonathan

13   Ruiz.

14              THE COURT:  Thank you, Counsel.

15              MS. ROSSI:  Good morning, Your Honor.  Rachel Rossi

16   and Jennifer Uyeda on behalf of Angelo Harper, Jr., who is

17   present in custody.

18              MS. UYEDA:  Good morning, Your Honor.

19              THE COURT:  Thank you, Counsel.

20         Okay.  Both sides have rested on this matter.  This is the

21   time for closing argument.

22         Counsel, do you want to be heard?

23              MS. PALMER:  Yes, Your Honor.

24              MS. ROSSI:  Your Honor, I'm sorry.  Can we address one

25   housekeeping matter prior to closing argument?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                THE COURT:  Sure.
 2                MS. ROSSI:  We just wanted to specify for the record,
 3   Government's Exhibit 10, that was the video of the iPad that
 4   government was playing, it's a 1-minute-and-47-seconds clip
 5   total, and the defense had objected at about 51 seconds of that
 6   clip, and the Court had sustained that objection, and we just
 7   wanted to clarify that for the record.  I believe the Court
 8   stated on the record at about 2 minutes, but the whole --
 9                THE COURT:  That's what I said, it was about 2
10   minutes.
11                MS. ROSSI:  Yes, but the whole clip is about 1 minute
12   and 47 seconds, so we just wanted to clarify that on the
13   record.
14           And also, as to Government's Exhibit 9, we objected to the
15   last nine pages, because that corresponded to that portion of
16   the clip that was excluded, but we wanted to clarify it was the
17   last eight pages of that exhibit.
18                THE COURT:  The last eight pages or nine pages?
19                MS. ROSSI:  The last eight pages of Government's
20   Exhibit 9.
21                THE COURT:  Okay.
22           Counsel, want to be heard any on that?
23                MS. PALMER:  Yes, Your Honor.  The clip that we showed
24   in court was a minute-and-47-second clip of a video that was
25   approximately three minutes long.  We understood the Court's
```

```
1   ruling to be that everything that we showed in that

2   minute-and-47-second clip was admitted but that no more child

3   pornography after that would be --

4               THE COURT:  The two of you may want to look at it,

5   because that's exactly what I said.  Whatever was shown in

6   court was received.  Now, you're saying we only showed 50-some

7   seconds; you're saying we showed a minute and some.  We showed

8   what we showed.

9               MS. PALMER:  So to clarify, the entire clip that was

10  displayed has been admitted into evidence?

11              THE COURT:  No.  I said that part that had been played

12  would be admitted into evidence.

13              MS. PALMER:  That was played in court.

14              THE COURT:  That was played in court.

15              MS. PALMER:  Thank you, Your Honor.

16              THE COURT:  Yeah.

17      And let me get to -- and any objection to -- I think I've

18  already ruled on it.  Was it Exhibit No. 9, the last eight

19  pages?

20              MS. ROSSI:  Yes, Your Honor.

21              THE COURT:  Yeah, I think I've already ruled on that.

22              MS. PALMER:  Right.  I think that objection was

23  overruled, but I think that defense counsel wanted to clarify

24  for the record what they were seeking to keep out.

25              MS. ROSSI:  My understanding was it was sustained,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   Your Honor.
 2           THE COURT:  I sustained the last eight pages, I
 3   thought, of that, yes, of No. 9.
 4           MS. PALMER:  Of the redacted images, Your Honor?
 5           THE COURT:  One, two, three, four -- okay, I've got 9
 6   in front of me, and that is -- the pages aren't numbered, are
 7   they?  Counsel, the pages are not numbered?
 8           MS. PALMER:  They're not, Your Honor.  But I think our
 9   understanding was that all of the redacted images in No. 9 were
10   admitted because of the context, because they were all in the
11   same conversation --
12           THE COURT:  That's right.
13           MS. PALMER:  -- as the August 26th posting.
14           MS. ROSSI:  Your Honor, we had objected to the final
15   nine pages in court.
16           THE COURT:  That's correct.  And today you're
17   objecting, you're saying the final eight pages is what you --
18           MS. ROSSI:  Yes, Your Honor.  And I believe the Court
19   sustained it because it corresponded to the portion of the
20   video that the Court did not play, which was past 51 seconds.
21           THE COURT:  Okay.  Okay.  And the last page -- the
22   last eight pages starts with the page that says what at the
23   top?  I want to make sure we're talking about the "All
24   things" -- is that the one with Wednesday, 9:40 p.m.?
25           MS. ROSSI:  Yes, Your Honor.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  Starting there?

2      Okay.  So from that page until the end?  We all on the

3  same?

4          MS. PALMER:  Mm-hmm.  Is that the page that ends at

5  the video clip, Your Honor?

6          THE COURT:  We're talking about Exhibit 9.

7          MS. PALMER:  Yes.

8          THE COURT:  And we're talking about the last eight

9  pages, which starts with the date of Wednesday at 9:40 p.m.

10          MS. PALMER:  Okay.  What is the ruling on that last

11  eight pages, Your Honor?

12          THE COURT:  That they would be excluded.

13          MS. PALMER:  May the government still introduce

14  evidence about what Agent McCall testified to that he read in

15  the room on those days?

16          THE COURT:  Whatever is into evidence already is into

17  evidence, that's correct.

18          MS. PALMER:  And --

19          THE COURT:  I just did not receive these last eight

20  pages.

21          MS. PALMER:  Okay.

22          THE COURT:  Okay.  Anything else housekeeping-wise

23  before we get into argument?

24          MR. STOUT:  Your Honor, could we have five minutes

25  before closing argument?  I believe a page that the Court has

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   just informed us is excluded is included in the PowerPoint that

2   we were planning to present, and it would be helpful if we

3   could now delete it.

4           THE COURT:  Five minutes?

5           MR. STOUT:  Five minutes to delete it from the

6   PowerPoint.

7           THE COURT:  Okay.

8           MS. PALMER:  Thank you, Your Honor.

9           THE CLERK:  All rise.

10      Court is in recess.

11      *(Recess held from 9:14 a.m. to 9:23 a.m.)*

12          THE COURT:  Okay.  Counsel, we're ready for opening

13  statement?

14          MS. PALMER:  Yes, Your Honor.

15          THE COURT:  Okay.  Opening argument.  When I say

16  "opening," it's closing argument, but you also get the last

17  word on it.  So go ahead, Counsel.

18          MS. PALMER:  Thank you, Your Honor.

19      Your Honor, may I try to turn off that sound?

20          THE COURT:  Yeah.

21          MS. PALMER:  May I proceed, Your Honor?

22          THE COURT:  Yes, please, Counsel.

23          MS. PALMER:  Thank you, Your Honor.

24      Defendant is here today because he advertised child

25  pornography, in violation of Title 28 of U.S. Code, Section

1   2251.

2        An advertisement is a posting with the purpose of advising

3   others that child pornography is available.

4        There are three elements to this crime, all of which the

5   government has proven beyond a reasonable doubt in court.

6        First, the defendant knowingly made, printed, published,

7   or caused to be made, printed or published, an advertisement;

8   second, the advertisement offered to receive, exchange, buy,

9   produce, display, distribute or reproduce any visual depiction

10  if the production of the visual depiction utilized a minor

11  engaging in sexually explicit conduct and the visual depiction

12  offered was of such conduct; and three, the advertisement was

13  actually transported across state lines.

14       Here, first, defendant knowingly made or published an

15  advertisement.  Defendant posted two comments in the Kik

16  NEPILOVERS chat room that advertised child pornography.

17       First he wrote, "You guys like toddler boys or girls?  I

18  have pics and vids of both."

19       Next he posted, "I have tons of pics and vids of little

20  boys and girls.  PM me for a chat and trade of kids under six."

21  Trading of the kinds of pictures and videos the defendant

22  posted in that same chat room and in that same conversation,

23  pornographic images of children.

24       Less than a month ago, the Ninth Circuit addressed a

25  similar case in *United States vs. Grovo.*  There, the Ninth

Circuit upheld the convictions for posts in an invitation-only online message board for sharing child pornography and non-pornographic images of children.  The Ninth Circuit affirmed the district court's finding that offering child pornography to a closed community constituted an advertisement of child pornography.  The Ninth Circuit rejected the defendant's argument that posts were not advertisements because they were visible only to members of that message board, and the Court held that advertising to a particular subset of the public is sufficient to sustain a conviction.

We also know that defendant knowingly made his advertisement.  We know that because he didn't place his ad in a Toys-R-Us store or in a Pampers baby model talent search.  He wrote what he wrote in an online chat room devoted to nepiophilia.  NEPILOVERS, a group devoted to all things toddler and nepi, a group that was used to distribute child pornography, a group where defendant went on, as he told Special Agent Ruiz, to meet with people like him, people who are interested in child pornography.

The defendant told Special Agent Ruiz that he knew what "nepi" meant.  He knew that it meant pictures of babies and toddlers.  And we heard from Agent McCall that when defendant was in the NEPILOVERS chat room, he wrote, "I'm liking the name of this group."  The same group where defendant knowingly distributed a child pornography image on October 7, 2015, a

1   crime to which he pled guilty last week, and the same group the

2   members told defendant that they felt misled when they saw

3   defendant's pictures taken with one phone of images displayed

4   on the screen of another phone and mistakenly thought the

5   defendant had produced those images live.

6          Second, we know that defendant's advertisement offered to

7   exchange, display or distribute child pornography.

8          Here, defendant said that he had tons of pics and vids of

9   little boys and girls and invited members of the group to

10  private message him for chat and trade of kids under six.

11  These statements made offers.  Defendant offered to display,

12  distribute, receive and exchange.  He offered to trade.

13         As the Ninth Circuit found in *Grovo,* posts are not

14  ambiguous merely because they do not contain an explicit

15  declaration that they are offering child pornography.  There

16  are no magic words that need to be included to make an

17  advertisement for child pornography an advertisement.

18         Defendant also made these statements to other people.  He

19  made them to members of the NEPILOVERS chat room, members who

20  may have joined the chat room through hyperlinks like the one

21  that Agent McCall received in another child pornography chat

22  room in order to access it.  Members who had avatars that

23  contained pictures of young children or sexual -- sexual

24  members, and members who, when defendant wrote, "You guys

25  like?" wrote, "Yeah."  That's what we heard Special Agent

McCall testify he read in NEPILOVERS chat room.

These statements offered child pornography.  Defendant said them in a child pornography chat room, and he said them in the context of image after image of small children being sexually assaulted.  Images like the one that Agent McCall saw Bobby Green post in the NEPILOVERS chat room, images like the one displayed in the admitted portion of the iPad video that Agent McCall took, images that defendant admits portrayed real children.

Section 2251 defines child pornography as any visual depiction of a minor engaged in sexually explicit conduct; that depiction was created using a minor engaged in sexually explicit conduct.  Sexually explicit conduct means actually or simulated sexual intercourse, or the lascivious exhibition of the genitals.

That is what defendant meant when he advertised that he had pictures and videos of infants and toddlers, because the pictures and videos the defendant distributed in NEPILOVERS chat room, and more importantly, the pictures and videos that he offered to distribute, weren't art, they weren't family photos, they weren't products of his imagination; they were child pornography, and they were the product of the sexual abuse of real children.

Third, we know the defendant's advertisement was actually transported across state lines, not just because he put it on

1    the Internet, and the Ninth Circuit found, in *United States vs.*

2    *Wright*, that that's enough to satisfy the interstate commerce

3    requirement of the statute, but also because defendant made

4    these advertisements in Moreno, California, and Special Agent

5    McCall received them in Delaware.

6           Finally, we know that defendant is the person who

7    committed this crime.  He placed this ad from his Kik account,

8    CM8JIAW4, using his display name of Bobby Green from his home,

9    connected to the IP address as determined by the Kik and Time

10   Warner Cable summons returns that Special Agent McCall

11   received, with his smartphones, the iPhone that was recovered

12   from his person and the HTC phone that was recovered from his

13   bedroom, phones that Special Agent Salaam accessed using the

14   password the defendant gave Special Agent Ruiz, and phones that

15   contained the images that defendant posted to the NEPILOVERS

16   chat room on August 26th, 2015, and October 7, 2015.

17          The little girl on the spiral sheets that was posted in

18   the Kik chat room, that image was found on defendant's iPhone.

19   And the video that Special Agent McCall testified to was found

20   on defendant's HTC.  And defendant admitted it.

21          On October 13, 2015, defendant told Special Agent Ruiz

22   that was his account, his user name, his display name, an

23   account that he used to exchange child pornography on Kik with

24   other people like him.  He told Special Agent Ruiz that he was

25   Bobby Green.  He told Special Agent Ruiz that he was CM8JIAW4.

```
 1    And defendant told Agent Ruiz exactly what he liked about

 2    little boys and girls.  Sexually explicit images, images like

 3    the ones the defendant possessed and distributed, images of

 4    child pornography.

 5         Last week, defendant pled guilty in this courtroom.

 6    Before this Court, under oath, defendant admitted that he

 7    possessed child pornography in January 2014.  He admitted that

 8    he distributed child pornography in October 2015.  And now he

 9    should be found guilty of advertising child pornography in

10    August of 2015.

11         Thank you.

12              THE COURT:  Thank you, Counsel.

13         Counsel.

14              MS. ROSSI:  Thank you, Your Honor.

15         This case is about four statements and two images posted

16    on August 26, 2015.  The indictment charges advertising, in

17    violation of 18 United States Code, Section 2251(d)(1), on

18    August 26, 2015.  Nothing in October is charged in Count 1 of

19    the indictment.  And the government has failed to prove this

20    charge for three reasons.

21         First, the government has failed to prove that the

22    jurisdiction or venue is proper.  Second, the government has

23    failed to prove that on August 26th Mr. Harper actually

24    advertised to an audience.  And third, the government has

25    failed to prove that the images Mr. Harper posted meet the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    federal definition of child pornography.

2         In the Court's consideration of this case, it's important

3    to focus on the relevant facts that matter.

4         In looking at Government's Exhibit 9, there were four

5    statements and two images posted in the Kik chat room on

6    August 26, 2015.  Mr. Harper entered the chat room August 26th

7    at 11:01 a.m.  He posted three statements, two images, and then

8    the final statement.  This is the charge and the only conduct

9    that the Court should consider.

10        First, the government has not proven either jurisdiction

11   or venue for this offense.  Before addressing the merits of the

12   evidence, the Court must look to see whether jurisdiction is

13   proper in the United States and whether venue is proper in the

14   Central District of California.

15        Jurisdiction is proper if the offense or part of the

16   offense occurred within the United States.  The Constitution

17   and the Federal Rules of Criminal Procedure require that the

18   government prosecute an offense in the district where the

19   offense was committed.  Specifically, the government bears the

20   burden to prove by a preponderance of the evidence that venue

21   exists in this district.

22        For venue purposes, venue is proper when the essential

23   conduct element of the offense occurs in the charging district.

24   So this means that the government must prove that Mr. Harper

25   was in the Central District on August 26, 2015 and when he

1    posted the alleged advertisement to Kik from someplace within

2    the Central District of California.

3         The evidence before the Court is that Kik is a

4    Canada-based company, and the government's own evidence reveals

5    that Mr. Harper accessed Kik from a mobile device, not a

6    desktop computer; specifically, an Android mobile phone, a

7    phone that could have been anywhere in the world on August 26,

8    2015.  The government has presented no evidence as to where

9    Mr. Harper was on August 26th, where any of these multiple

10   phones were on August 26th, or where the alleged advertisement

11   was posted from on August 26, 2015.

12        Further, if the Court turns to the government's own

13   evidence, Exhibit 1 are the Kik records for the CM8JIAW4 Kik

14   account for Mr. Harper, and the Court can flip through those

15   records and can see that there is no indication of what IP

16   address was accessed on August 26, 2015.  The records begin in

17   September of 2015.  The records that the government presented

18   to establish an IP address linked to Mr. Harper's address begin

19   in September of 2015.  And again, as the Court remembers, an IP

20   address would show -- or the Kik records would show that

21   Mr. Harper had logged into the account on a particular day.

22        And if the Court turns to Government's Exhibit 3, these

23   are the Kik records for Mr. Harper's second Kik account, the

24   Money Film Music account.  And if the Court turns to Bates 2121

25   in Government's Exhibit 3, it will see the records specifically

1    for the Money Film Music account, and it will see that there is

2    no indication of where the account was accessed on August 26,

3    2015.

4         There is no evidence before this Court showing that the

5    August 26th posts were made from the IP address in Moreno

6    Valley or anywhere else in the Central District or even in the

7    United States.  For this reason alone, the government has

8    failed to prove that venue is proper in this district or that

9    there is jurisdiction in any U.S. court over this offense.  The

10   Court's analysis must end here, and the Court should enter a

11   judgment of not guilty based on failure to prove venue.

12        However, even if the Court turns to the elements of the

13   offense, the government has not proven advertisement beyond a

14   reasonable doubt.  And the government already boiled down the

15   elements of the offense, and I have the model instruction up

16   here on the PowerPoint, but the relevant elements that the

17   government has not proven are, number one, an advertisement,

18   and number two, that Mr. Harper specifically advertised what

19   qualifies as child pornography under the federal definition.

20   And as the Court knows, the Court must make this determination

21   beyond a reasonable doubt.  The Court must determine whether

22   there's sufficient evidence beyond a reasonable doubt.

23        As cited by the government, an advertisement to a

24   particular subset of the public is sufficient to sustain a

25   conviction under the statute.  That's the *United States vs.*

1    *Grovo case.*  That means that the government must prove an

2    advertisement.  There needs to be some subset of the public or

3    some audience in the chat room on August 26th, 2015.  And the

4    government has failed to prove that the four statements and two

5    images on August 26th were publicized to any audience

6    whatsoever.

7        Other courts in this district have found similar

8    definitions of advertisement, noting that there must be some

9    audience posted to.  No court has ever held that a posting made

10   to a group of no one qualifies as an advertisement.  There must

11   be an audience.  There must be at least some subset or some

12   small group.  And the Court knows that Kik is a mobile

13   messaging social application where there are chat groups with

14   up to 50 people in them.  However, there could be anywhere from

15   one person to 50 people maximum in that chat room.

16       Agent McCall testified that he only longed into the chat

17   room October 8th and October 11th of 2015.  Agent McCall

18   himself was not present in the chat room on August 26, 2015.

19   And if the Court looks at the screen shots, it reveals

20   Mr. Harper logged into the chat room on August 26, 2015, he

21   posted three statements, then two images, then he posted a

22   final statement, and then the Court can see there is silence in

23   the chat room for about three weeks.  And then on September

24   13th, 2015, Mr. Harper exits the chat room at 11:10 p.m.

25   During that time frame, the screen shots do not show anyone

1  else entering the chat room.  The screen shots do not show

2  anyone else exiting the chat room.  The screen shots do not

3  show any other posts, comments, or anything else depicting

4  another person in that chat room.  The government has not

5  proven that there was an advertisement made to anyone of the

6  public at all.

7       Third and finally, the government has to prove that

8  specifically what Mr. Harper advertised qualifies as child

9  pornography.  The government must prove that Mr. Harper

10  advertised an actual image or images.  This is to ensure that

11  the Court meets the -- that the government meets the elements

12  that the images advertised were of child pornography and the

13  images advertised were of real children.

14       The statute does not prohibit advertising what qualifies

15  as child pornography but does not depict an actual child, and

16  likewise, the statute does not prohibit advertising images of

17  real children that do not qualify as child pornography under

18  the federal definition.

19       So the question becomes, what images are the government

20  alleging Mr. Harper advertised?  Based on the charges in the

21  indictment, again, the Court must look to the two images posted

22  in August 26, 2015.  And the government must prove that those

23  two images are real children and depict federally defined

24  sexually explicit conduct.  And as the government noted,

25  sexually explicit conduct would require either sexual

1    intercourse or the genitals or pubic area of the minor.  I'm

2    sorry.  Lascivious exhibition of the genitals or pubic area.

3    And the government has chosen to present to the Court a blurry

4    video which was taken filming an iPad screen which depicted

5    screen shots of images, which images were allegedly posted from

6    an HTC phone but taken from a picture of the screen of an

7    iPhone of the original image.  That is the evidence before the

8    Court.  That is five layers of cameras on digital devices

9    between the Court and the actual images Mr. Harper is alleged

10   to have advertised.  And if the Court cannot see what is

11   required to be met in order to prove these elements, then the

12   government has failed to meet their burden.

13        The first image shown in -- or posted in August 26, 2015

14   depicts the backside of a child.  This is not the lascivious

15   display of the genitals or pubic area.  That image is not child

16   pornography.  The second image posted on August 26, 2015,

17   there's no evidence in the record whatsoever that it was of an

18   actual child.  Accordingly, the government has failed to prove

19   that on August 26, 2015, Mr. Harper advertised images that meet

20   the definition of child pornography.

21        Now, the government has asked this Court to consider that

22   Mr. Harper advertised also in October, that the video in

23   October is relevant to the Court's consideration.  And as we

24   stated, August 26th is what is charged in the indictment.  If

25   the government were to argue today that Mr. Harper intended to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    advertise images or videos in October, that would be a

2    constructive amendment or a fatal variance from the charges in

3    the indictment.  The indictment was clear, and the government

4    stated:  Mr. Harper was alleged to have advertised only on

5    August 26th, and he was alleged to have distributed in October

6    of -- I'm sorry, 2015, and distributed in October of 2015.

7         Even if the Court were to consider the October evidence,

8    the government's argument doesn't make sense.  The government

9    has provided no evidence that Mr. Harper was in possession of

10   the October video back on August 26, 2015.  The government has

11   presented no evidence whatsoever that Mr. Harper knew of that

12   video on August 26, 2015.

13        The images and videos that were found on Mr. Harper's

14   phones were found on October 13th, 2015, the day of the search

15   warrant.  And when the Court asked the witness when those

16   images or video were placed on the iPhone or when they were

17   created, the witness did not know.

18        There was no evidence presented to show that Mr. Harper

19   possessed the October 7th video or any October images on

20   August 26, 2015.  He could not have intended on August 26 to

21   advertise images he did not yet possess or even know existed.

22        So again, Your Honor, before the Court is just four

23   statements and two images.  What is not before the Court is

24   proof beyond a reasonable doubt that this evidence constitutes

25   advertising child pornography in violation of Section 2251(d).

1        First, the government has failed to prove jurisdiction or

2   venue.  Second, the government has failed to prove that on

3   August 26th Mr. Harper advertised to any audience.  And third,

4   the government has failed to prove that the posted images on

5   August 26th, the images that are the subject of the

6   advertisement, qualifies as child pornography under the federal

7   statute.  And for these reasons, Your Honor, we ask that the

8   Court find Mr. Harper not guilty of Count 1.

9        THE COURT:  Thank you, Counsel.

10        MS. PALMER:  May I proceed, Your Honor?

11        THE COURT:  Yes, please.

12        MS. PALMER:  Defense counsel told you that there are

13   three reasons why the government didn't meet its case.  First,

14   it said that jurisdiction wasn't proper, that the government

15   didn't establish that the defendant committed these crimes on

16   August 26, 2015, in the Central District of California.

17   However, we know the defendant lives in Central District of

18   California.  He goes to school in the Central District of

19   California.  He posts his child pornography --

20        MS. ROSSI:  Objection, facts not in evidence.

21        THE COURT:  The last part about going to school, I

22   don't believe was in evidence.

23        MS. PALMER:  Thank you, Your Honor.  Withdrawn.

24      He lives in the Central District of California.  He has

25   phones that he keeps in Central District of California.  He

said that he conducts his child pornography vid- -- his child

pornography activity from his HTC phone, which is in his

bedroom, which he told Special Agent Ruiz that stays usually on

the footstool in his bedroom, in a room that he lives in by

himself.  We also have evidence from Kik that he accessed that

account 28 times, also from an IP address in Riverside,

California.

The second reason that the defense attorney gave was that

the government had not proved the defendant had advertised to

an audience.  But we know he had an audience.  At the very

least, we know he had the audience of Special Agent McCall.  We

also know, based on Special Agent McCall's testimony, that

other members responded to the pictures that defendant posted.

He asked, "Do you guys like?"  And people responded, "Yeah."

Someone responded, "Yeah."  He also told Special Agent McCall

that other people in the chat room had indicated that they felt

misled by images he had posted in that chat room.

It would appear that defense counsel is trying to add an

element of simultaneousness to the statute that simply isn't

there.  This is similar to one of the arguments that was put

forth by the defendants in *Grovo,* where they tried to add an

element of simultaneousness to conspiracy for advertisement.

And the Ninth Circuit found that that wasn't required.  If an

advertisement is put up on a billboard in August and someone

drives by it in October, that's still an advertisement.

1     And finally, defense counsel argues that the images that

2 defendant posted on August 26, 2015, were not child

3 pornography.  The government contends that they are.  It's been

4 stipulated to that at least one of those images contained a

5 real child.  The images contain images of sexual contact with

6 children and the lascivious display of children's genitals.

7 But more than that, the government doesn't have to prove that

8 the images that defendant posted on August 26th are child

9 pornography.  It has to prove that the images that he

10 advertised are child pornography, that that's what he meant

11 when he said, "I've got pictures and videos," in a group called

12 NEPILOVERS which defendant admitted was devoted to the exchange

13 of child pornography images of babies and toddlers.  For

14 that --

15     May I have a moment to confer with counsel, Your Honor?

16     *(Government counsel confer privately.)*

17     MS. PALMER:  Additionally, Your Honor, defendant

18 admitted to Special Agent Ruiz that he believed that there were

19 real children in the images in which he dealt.  And for that

20 reason, Your Honor, the government submits that there is only

21 one verdict consistent with the law and the facts, and that is

22 guilty.

23     Thank you.

24     THE COURT:  Okay.  Thank you, Counsel.

25     Okay.  In this particular matter, the -- first of all, let

```
 1   me tell you that both sides argued their case very well.  The
 2   Court is going to find the defendant guilty of Count 1.  The
 3   Court finds that beyond a reasonable doubt there is sufficient
 4   evidence to support that verdict.
 5        Counsel, what's the date for sentencing on the other
 6   matter?
 7            THE CLERK:  October 17th.
 8            THE COURT:  October 17th?  Want to put this over to
 9   the same date, October 17th?
10            MR. PENCE:  Yes, Your Honor.
11            MS. ROSSI:  That's fine, Your Honor.
12            THE COURT:  Okay.  Put this over till October 17th.
13        Okay.  Anything further, either side?
14            MS. PALMER:  No, Your Honor.  Thank you.
15            MS. ROSSI:  No, Your Honor.
16            THE COURT:  Okay.  We'll be in recess.
17            THE CLERK:  All rise.
18        Court is in recess.
19
20                 (Proceedings concluded at 9:52 a.m.)
21
22                            --o0o--
23
24
25
```

*CERTIFICATE*

*I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  January 24, 2017*

*/S/ SANDRA MACNEIL*

*Sandra MacNeil, CSR No. 9013*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA